IN RE MOTZ.

(No. 263—Decided April 20, 1955.)

*Mr. James B. Albers,* for petitioner.
*Mr. C. William O'Neill,* attorney general, and *Mr. Roger B. Turrell,* for respondent.

MIDDLETON, J.   This is an action in habeas corpus instituted in this court.

The petitioner recites that she is confined in the Ohio Re-

formatory for Women, at Marysville, Ohio; that her confinement is without legal authority; that at her trial she was without legal counsel to defend her, although she made every effort to obtain an attorney; that the court failed to appoint counsel to defend her; and that, as a consequence, she was forced to go to trial without counsel, in violation of her right to a proper defense accorded her by the Constitution and the laws of Ohio.

The petitioner recites further that, after being convicted by a jury, she was transferred for examination to Lima State Hospital where she was kept for thirty days and then transferred to the women's reformatory where she was kept in strict confinement for seven weeks; that during that time her right to appeal had expired; that for a period of four months following her conviction she was unable to communicate with an attorney; and that, by reason of the foregoing, her rights at the trial were violated, her sentence was void, and her imprisonment is illegal.

The return filed by the superintendent of the reformatory sets out a copy of the indictment upon which the petitioner was tried. The indictment contains 17 separate counts, nine for giving checks with intent to defraud, seven for larceny by trick, and one for the conversion of trust property.

The evidence offered by the petitioner shows that she is about 45 years of age, and the mother of four children, two boys and two girls, aged 26, 18, eight and five years, respectively; that between the time of her indictment and trial, her daughter was confined to a hospital for a period of many months, her son had entered the U. S. Air Force, her husband was ill, and she was the support of the family.

The record shows petitioner contacted a number of attorneys, requesting them to represent her, but for one reason or another she was unable to secure the services of anyone to defend her, until the morning of the trial. The record shows that on the day of trial she appeared with Mrs. Clara Cory, an attorney, representing her. When the court called the case for trial, her attorney stated to the court that she had been called into the case about 4 the afternoon before and that she had not had an opportunity to do any investigating; and she asked the court for a continuance to give her an opportunity to become acquainted with the facts. After this statement, the prosecut-

ing attorney stated that on several other occasions the petitioner had appeared in court with an attorney who made a like request for a continuance, which was granted. The prosecutor then stated that the state was ready for trial.

After much discussion on the question of a continuance between the judge, the prosecuting attorney and Mrs. Cory, which continuance the court refused, the record discloses the following to have taken place:

"The Court: Now is there anything else you want to say, Mrs. Cory, at this time?

"Mrs. Cory: There isn't anything else I can say.

"The Court: You may sit down. We will hear further from you. Do I make myself understood? We as judges are compelled to give speedy trials to all of the persons indicted, that is the Legislature's mandate to us. If Mrs. Motz is innocent, as she strenuously maintains, that trial should have been way last fall. Surely you have enough faith in our legal profession to know that a series of lawyers do not back out unless there is some reason for it, isn't that right?

"Mrs. Cory: That is right.

"The Court: If you know Mr. Durschnitt you know what his feeling and his standing and attitude has been. Mr. Durschnitt has talked to me many times even though I haven't been in the court room about this very problem. Now consider what this means to the prosecutor and to the 29 witnesses who are called down here. That won't do. It is not your fault, please understand.

"Mrs. Cory: I realize.

"The Court: We are ready to try this case today. We will proceed with the trial. I will relieve you of responsibility if that is your desire because I can't conscientiously force you into the trial of the case on such short notice. But I must look through you to the standing of the client in the case. Do I make myself understood?

"Mrs. Cory: Yes.

"The Court: So we are ready for trial here, that is the whole answer to that. Do you want to talk to your client? We will step aside. You can see where you stand now, but we will try this case today.

"(And thereupon a short recess was taken.)

"The Court: Let the record show that Mrs. Cory feels that she must withdraw as counsel for the defendant in this case and that the court has granted such permission based upon the representations heretofore made.

"Mrs. Cory: Thank you."

The petitioner testified that prior to the day of trial when she appeared with counsel, her failure to secure an attorney to represent her was due to lack of funds with which to pay such attorney. She testified also that the court did not at any time advise her of her right to have counsel appointed by the court; and that she did not request the court to appoint such counsel, as she did not know she had such right.

The right of an accused in criminal prosecutions to the assistance of counsel is protected by the Sixth Amendment to the Constitution of the United States, by Section 10, Article I of the Constitution of Ohio, and by Section 2941.50, Revised Code.

Section 2941.50, Revised Code, provides:

"After a copy of an indictment has been served or opportunity had for receiving it, the accused shall be brought into court, and if he is without and unable to employ counsel, the court shall assign him counsel, not exceeding two, who shall have access to such accused at all reasonable hours. Such counsel shall not be a partner in the practice of law of the attorney having charge of the prosecution. A partner of the attorney having charge of the prosecution shall not be employed by or conduct the defense of a person so prosecuted."

There was no opportunity given petitioner to secure other counsel after the court permitted Mrs. Cory to withdraw from the case, nor did the court assign counsel to represent her. She was forced to trial without the benefit of counsel. To force her to trial on an indictment containing 17 counts, which trial consumed seven days, was clearly a denial of petitioner's constitutional and statutory rights. The requirement that defendant proceed to trial under the circumstances appearing in this record does not meet the test of a fair trial. Permitting counsel to withdraw, refusing to grant a continuance, and failing to assign other counsel to represent petitioner was, in its practical effect, a denial of her right to be defended by counsel.

This question has been passed upon by the Supreme Court of the United States. While the court holds that the provisions

of the Sixth Amendment to the Constitution of the United States apply only to federal courts, the case of *Johnson* v. *Zerbst, Warden,* 304 U. S., 458, 82 L. Ed., 1461, 58 S. Ct., 1019, which arose under the Sixth Amendment to the United States Constitution, is analogous, and applies with great force, to the facts in the case at bar which arises under Section 10, Article I of the Constitution of Ohio.

In the *Johnson case,* on page 462, the court said:

" 'In all criminal prosecutions, the accused shall enjoy the right * * * to have the assistance of counsel for his defence.' This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. * * * The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.' It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this court has pointed to '* * * the humane policy of the modern criminal law * * *' which now provides that a defendant '* * * if he be poor, * * * may have counsel furnished him by the state * * *;' * * *.

"The '* * * right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defence, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him.' "

At page 465, the court said:

"The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution. True, *habeas corpus* cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial; and the 'writ of *habeas corpus* cannot be used as a writ of error.' These principles, however, must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The scope of inquiry in *habeas corpus* proceedings has been broadened—not narrowed—since the adoption of the Sixth Amendment."

The question is presented: Did the action of the court in forcing the defendant to trial without counsel deprive her of a fundamental constitutional right, causing the court to lose jurisdiction; or was such action simply an irregularity in the proceedings, constituting error? Did such action oust the court of jurisdiction or constitute error the remedy for which is appeal?

"Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. If this requirement of the Sixth Amendment is not complied with, the court

no longer has jurisdiction to proceed." (*Johnson* v. *Zerbst, supra,* at 467.)

The petitioner has no adequate remedy at law. It is apparent from the record that after her conviction she was in strict confinement during the time she might have prosecuted an appeal. The time for appeal is long since past. There could be no record upon which an appeal could be based.

In the case of *In re Burson,* 152 Ohio St., 375, 89 N. E. (2d), 651, Judge Hart, in commenting on the duty of the court to assign counsel under Section 13439-2, General Code, stated:

"In the opinion of this court, the section of the statute just quoted, mandatory in terms, must be complied with unless compliance is waived by a defendant, which we hold may be done. Perhaps it was unfortunate that the court did not specifically advise the petitioner concerning his right to counsel, but under the circumstances with the record of the petitioner before it, the court might assume that he knew his rights in this respect and chose to plead guilty rather than to stand trial on a charge concerning which he knew he had no defense."

In the *Burson case, supra,* the petitioner pleaded guilty and thereby raised "a presumption of waiver of the right to counsel unless there are circumstances which rebut and nullify such presumption.

"Whether the petitioner's plea of guilty and consequent waiver of the appointment of counsel was intentional and intelligently made must rest in the sound discretion of the trial judge before whom the plea was taken."

In the case before us, the petitioner's plea was "not guilty," and the record shows that she made every effort to obtain counsel to represent her and when she did obtain counsel the court permitted her counsel to withdraw and ordered trial to proceed. Obviously, it cannot be claimed that the petitioner waived any right she had to the protection of the court in assigning counsel to defend her, whether requested by her or not.

On the entire record, it is the opinion of the court that the trial of the petitioner without counsel was contrary to the generally accepted idea of fairness and right.

We believe the law as pronounced in the *Burson case* is clearly distinguishable from the case now before this court, and

that it does not bar the petitioner from receiving the relief prayed for.

We are of the opinion that under the factual situation appearing in the record, the trial court lost jurisdiction to proceed with trial upon its failure to advise petitioner of her right to have the court appoint counsel to defend her. Such failure was not simply error in procedure, reviewable only by appeal, but was a denial of a fundamental constitutional right.

The trial court having lost jurisdiction, the sentence and judgment are void, and the imprisonment of the petitioner illegal. The writ is allowed.

However, this order of discharge is not a grant of freedom for every purpose and against every claim. The petitioner, while entitled to be discharged from confinement under the unlawful commitment, is not entitled to absolute freedom. She is still in the custody of the court. *In re Henry,* 162 Ohio St., 62, 120 N. E. (2d), 588.

The indictment against her is still in full force and the Common Pleas Court of Franklin County still has jurisdiction of the person and subject matter.

It is, therefore, the order of the court that the petitioner be delivered to the custody of the Sheriff of Franklin County, to be returned to the trial court for further proceedings.

*Judgment accordingly.*

QUATMAN, P. J., and YOUNGER, J., concur.