Daniel PARKS, Petitioner,

v.

C. C. PEYTON, Superintendent, Virginia State Penitentiary, Respondent.

Civ. A. No. 69-C-28-D.

United States District Court
W. D. Virginia,
Danville Division.

July 24, 1969.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court on a petition for a writ of habeas corpus filed *in forma pauperis* by Daniel Parks, a state prisoner, pursuant to the provisions of 28 U.S.C. § 2241. This petition was filed with this court on May 26, 1969.

Petitioner is currently serving a life sentence pursuant to his conviction for murder in the Circuit Court of the County of Halifax, Virginia. Petitioner was tried by a judge without a jury after a plea of guilty.

Petitioner did not appeal the trial court's conviction to the Virginia Supreme Court of Appeals, but he did petition the Hustings Court, Part Two, of

the City of Richmond for a writ of habeas corpus on April 18, 1967. The Hustings Court ordered the clerk of the court to issue a writ of habeas corpus directing respondent to produce Daniel Parks before the Circuit Court of Halifax County. After a full hearing of the matter on March 14, 1968, the Circuit Court of Halifax dismissed the petition. Subsequently on March 11, 1969, the Virginia Supreme Court of Appeals rejected a petition for a writ of error to the lower court's decision. The petitioner is alleging essentially the same grounds in this court as he did in the Virginia courts on his writ of habeas corpus. Thus, petitioner has exhausted his state remedies in compliance with 28 U.S.C. § 2254 and is properly before this court. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

Petitioner's first contention is that the confession used against him at his trial was involuntary. The events leading up to the confession were as follows.

Petitioner was arrested on Sunday night, March 8, 1954, for the rape and murder of Rosa Drumwright, an 84 year old woman. Petitioner was placed in the South Boston jail that night. The next morning petitioner was taken to the Sheriff's Office in the County of Halifax where he confessed and signed a statement. At petitioner's trial in 1954, Chief Bowman, Chief of Police of South Boston, testified that he advised the accused of his rights and that the accused freely and voluntarily told him what happened. At the hearing on the habeas corpus petition in the Circuit Court of Halifax County on March 14, 1968, W. K. Bain, the Deputy Sheriff in the County of Halifax in 1954, testified that he, the petitioner, Chief Bowman, and Jailor Warren were present when the statement was read to the petitioner and the petitioner signed it. Bain testified that after every paragraph and sometimes after each sentence petitioner was asked, "Do you understand this, is this what you told me and is this right?" Bain also testified that petitioner was not forced to sign the statement and no promises were made to obtain the statement. Petitioner's counsel at the 1954 trial testified at this hearing that he was not given any reason to believe the confession was involuntary. Petitioner testified that he did not know that he killed Rosa Drumwright until the next day because he was so drunk. He claims that he was still feeling the effects the next morning when he made the statement incriminating himself. He claims that on that morning he was taken into the street and a picture was taken of him in the custody of Chief Bowman. At this time he testified that a crowd was in the street yelling, "Let me get to him and let us take care of him. We can fix him." A picture was published in the paper with the petititoner in Chief Bowman's custody. Petitioner testified that after the picture was taken he was taken back inside and told, "Well, it's a good thing we didn't let them people get to you last night." He stated that he was scared by this experience. About one hour later petitioner testified that he was taken to Halifax and there was asked to sign a piece of paper to show that he pled "guilty". He stated that the paper was not read to him and that he signed it. He did testify that the officer told him, "You don't have to sign this paper but if you want to sign this paper you can sign it." Dr. Kirven, the psychiatrist who examined petitioner at the Central State Hospital in 1954 before the trial, testified that petitioner was below normal intelligence and had no formal education.

The case of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), is not applicable here since this trial did not start until after June 13, 1966. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). After a full examination of the facts and testimony at the trial and hearing, this court finds the statement to have been given voluntarily. Two police officers have testified that petitioner was advised of his rights. Chief Bowman testified at petitioner's 1954 trial, when there was no challenge to the con-

fession, that the petitioner freely and voluntarily confessed after being advised of his rights. Since the evidence was overwhelming against petitioner, there would have been no reason for the police to coerce a confession. The only evidence showing an involuntary confession was the uncorroborated and contradicted testimony of the petitioner.

██ The second contention by the petitioner is that he was denied a fair and impartial trial because of the pre-trial publicity and because of the emotional attitude of the prosecutor towards him. The claim that petitioner was denied a fair and impartial trial because of the emotional attitude of the prosecutor is clearly frivolous. To prove that he was denied a fair and impartial trial due to pre-trial publicity, petitioner introduced at his hearing several newspaper clippings. The first was the picture of the petitioner and Chief Bowman with a related story on the front page of the South Boston newspaper on Tuesday, March 30, 1954. The story was an account of how the murder occurred according to the statement of petitioner. The second clipping was another article in the South Boston paper a week later stating when petitioner's case would be heard and again giving an account of the murder as related by petitioner's statement. On the same day there was an article in the Halifax paper concerning a Men's Social Club's resolution asking for a crack-down on all criminals. This article did not mention the petitioner. Finally, there was an article in the Halifax paper, on May 13, 1954, giving the cases on docket in the Halifax County Circuit Court and giving a short description of each case including petitioner's. While the court agrees that it was unfortunate the petitioner's statement was given to the newspapers, the court does not find that the pre-trial publicity denied petitioner a fair and impartial trial. This case was tried by a judge and there is no showing of any prejudice, bias, or other form of predisposition on his part. Further, this case is in no way similar to Sheppard v. Maxwell, 384 U.S. 333,

86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). There the court found the trial judge did not protect the defendant from inherently prejudicial publicity which saturated the community or control the disruptive influences in the courtroom. In petitioner's case the court finds none of the abuses of the Sheppard case. Under the facts of petitioner's case the court finds that the petitioner was given a fair and impartial trial.

Petitioner's third claim is that he was denied effective pre-trial and courtroom representation by counsel. Petitioner testified at the hearing that his counsel only talked to him twice before the trial. Petitioner testified that the first concerned whether he could get any money and the second was whether he was going with Rosa Drumwright. Petitioner stated at his hearing that his counsel never advised him of his rights to a jury, how to plead, or generally what to do. Petitioner also testified that he gave his counsel a few names of witnesses who might testify to petitioner's drunken state and that they were not introduced at his trial. Petitioner's counsel also testified at this hearing. He testified that because of the time lapse (14 years) he did not recall all of the details. He did not remember whom he interviewed, but because of the seriousness of the crime, he was certain he did interview all concerned. He did not remember how many times he conferred with the petitioner, but did recall going over the confession with the petitioner. He testified that he went over the case with the petitioner and the approaches the petitioner could take. He also testified that he remembers they were all happy over the outcome (petitioner did not receive the death penalty) and there was no reason to appeal.

█ The court can find no proof of ineffective representation except the allegations of petitioner. These allegations are uncorroborated and contradicted by petitioner's own testimony and that of his counsel. Petitioner must establish by a preponderance of the evidence that his rights were denied. Johnson v. Zerbst,

304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1937); Behrens v. Hironimus, 166 F.2d 245 (4th Cir. 1948). Petitioner has failed to carry this burden of proof.

The petitioner's last claim is that negroes were systematically excluded in the selection of grand and petit juries, thus violating his constitutional rights. Petitioner was not tried by a petit jury and therefore the court will not consider that point. It is generally stated that a voluntary plea is an admission of guilt and a waiver of all non-jurisdictional defects. Maxie v. Cox, 357 F.2d 335 (10th Cir. 1966); Bloombaum v. United States, 211 F.2d 944 (4th Cir. 1954). The systematic exclusion of negroes from the grand jury is not a jurisdictional defect. In White v. Pepersack, 352 F.2d 470, 472 (4th Cir. 1965) the court held:

> It is a familiar principle that a voluntary plea of guilty does foreclose subsequent collateral attack upon the judgment and the sentence when the attack is based upon an alleged deprivation at some earlier stage of the proceedings. The guilty plea is acceptable however, only after a searching inquiry to assure that its tender is voluntary. Even so, the plea is not a bar to a subsequent collateral attack if it is found in those proceedings that, because of the alleged deprivation, the plea was involuntary. The rule is applied in recognition of the fact that a defendant, aware that a confession may be excludable as involuntary, may still enter a truly voluntary plea of guilty if he also knows that other admissible evidence will establish his guilt overwhelmingly. If it appears, however, that the plea was the coerced product of a tainted confession, the involuntary plea, entered in ignorance of his rights, does not bar the collateral attack.

Thus, the only question raised by this claim is whether the plea of guilty was voluntary. If the guilty plea was voluntary, then this issue may not be raised by a collateral attack. The burden of proof is on the petitioner to establish by a preponderance of the evidence that his guilty plea was involuntary. Vanater v. Boles, 377 F.2d 898 (4th Cir. 1967). The petitioner at his hearing testified that he never made a plea. His counsel testified that he was sure petitioner decided on a plea of guilty after they went over the case. The petitioner has not established by a preponderance of the evidence that his plea was involuntary.

For the foregoing reasons the petitioner has failed to convince this court that he is entitled to federal habeas corpus relief based upon any of his claims. It is therefore adjudged and ordered that the writ be denied and the petition dismissed.

The clerk is directed to certify a copy of this opinion and judgment to the petitioner and to the respondent.