## JOHNSON *v.* ZERBST, WARDEN.

No. 699.  Argued April 4, 1938.—Decided May 23, 1938.

*Mr. Elbert P. Tuttle* for petitioner.

*Mr. Bates Booth,* with whom *Solicitor General Jackson, Assistant Attorney General McMahon,* and *Mr. William W. Barron* were on the brief, for respondent.

MR. JUSTICE BLACK delivered the opinion of the Court.

Petitioner, while imprisoned in a federal penitentiary, was denied *habeas corpus* by the District Court.[1]  Later,

---

[1] 13 F. Supp. 253.

that court granted petitioner a second hearing, prompted by "the peculiar circumstances surrounding the case and the desire of the court to afford opportunity to present any additional facts and views which petitioner desired to present." Upon consideration of the second petition, the court found that it did "not substantially differ from the" first, "and for the reasons stated in the decision in that case" the second petition was also denied.

Petitioner is serving sentence under a conviction in a United States District Court for possessing and uttering counterfeit money. It appears from the opinion of the District Judge denying *habeas corpus* that he believed petitioner was deprived, in the trial court, of his constitutional right under the provision of the Sixth Amendment that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." [2] However, he held that proceedings depriving petitioner of his constitutional right to assistance of counsel were not sufficient "to make the trial void and justify its annulment in a habeas corpus proceeding, but that they constituted trial errors or irregularities which could only be corrected on appeal."

The Court of Appeals affirmed [3] and we granted certiorari due to the importance of the questions involved. [4]

The record discloses that:

Petitioner and one Bridwell were arrested in Charleston, South Carolina, November 21, 1934, charged with

[2] The Sixth Amendment of the Constitution provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."

[3] 92 F. 2d 748.

[4] 303 U. S. 629.

feloniously uttering and passing four counterfeit twenty-dollar Federal Reserve notes and possessing twenty-one such notes. Both were then enlisted men in the United States Marine Corps, on leave. They were bound over to await action of the United States Grand Jury, but were kept in jail due to inability to give bail. January 21, 1935, they were indicted; January 23, 1935, they were taken to court and there first given notice of the indictment; immediately were arraigned, tried, convicted and sentenced that day to four and one-half years in the penitentiary; and January 25, were transported to the Federal Penitentiary in Atlanta. While counsel had represented them in the preliminary hearings before the commissioner in which they—some two months before their trial—were bound over to the Grand Jury, the accused were unable to employ counsel for their trial. Upon arraignment, both pleaded not guilty, said that they had no lawyer, and—in response to an inquiry of the court—stated that they were ready for trial. They were then tried, convicted and sentenced, without assistance of counsel.

"Both petitioners lived in distant cities of other states and neither had relatives, friends, or acquaintances in Charleston. Both had little education and were without funds. They testified that they had never been guilty of nor charged with any offense before, and there was no evidence in rebuttal of these statements."[5] In the *habeas corpus* hearing, petitioner's evidence developed that no request was directed to the trial judge to appoint counsel, but that such request was made to the District Attorney, who replied that in the State of trial (South Carolina) the court did not appoint counsel unless the defendant was charged with a capital crime. The District Attorney denied that petitioner made request

[5] Opinion of the District Judge, 13 F. Supp. 253, 254.

to him for counsel or that he had indicated petitioner had no right to counsel. The Assistant District Attorney testified that Bridwell "cross-examined the witnesses"; and, in his opinion, displayed more knowledge of procedure than the normal layman would possess. He did not recall whether Bridwell addressed the jury or not, but the clerk of the trial court testified "that Mr. Johnson [Bridwell?] conducted his defence about as well as the average layman usually does in cases of a similar nature." Concerning what he said to the jury and his cross-examination of witnesses, Bridwell testified "I tried to speak to the jury after the evidence was in during my trial over in the Eastern District of South Carolina. I told the jury, 'I don't consider myself a hoodlum as the District Attorney has made me out several times.' I told the jury that I was not a native of New York as the District Attorney stated, but was from Mississippi and only stationed for government service in New York. I only said fifteen or twenty words. I said I didn't think I was a hoodlum and could not have been one of very long standing because they didn't keep them in the Marine Corps.

"I objected to one witness' testimony. I didn't ask him any questions, I only objected to his whole testimony. After the prosecuting attorney was finished with the witness, he said, 'Your witness,' and I got up and objected to the testimony on the grounds that it was all false, and the Trial Judge said any objection I had I would have to bring proof or disproof."

Reviewing the evidence on the petition for *habeas corpus*, the District Court said.[6] that, after trial, petitioner and Johnson " . . . were remanded to jail, where they asked the jailer to call a lawyer for them, but were not permitted to contact one. They did not, however, undertake to get any message to the judge.

---

[6] 13 F. Supp. 253, 254.

" . . . January 25th, they were transported by automobile to the Federal Penitentiary in Atlanta, Ga., arriving . . . the same day.

"There, as is the custom, they were placed in isolation and so kept for sixteen days without being permitted to communicate with any one except the officers of the institution, but they did see the officers daily. They made no request of the officers to be permitted to see a lawyer, nor did they ask the officers to present to the trial judge a motion for new trial or application for appeal or notice that they desired to move for a new trial or to take an appeal.

"On May 15, 1935, petitioners filed applications for appeal which were denied because filed too late."

The " . . . time for filing a motion for new trial and for taking an appeal has been limited to three and five days." [7]

*One.* The Sixth Amendment guarantees that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty. Omitted from the Constitution as originally adopted, provisions of this and other Amendments were submitted by the first Congress convened under that Constitution as essential barriers against arbitrary or unjust deprivation of human rights. The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not "still be done." [8] It embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect

[7] 13 F. Supp. at 256; see, Rules of Practice and Procedure (Criminal Appeals Rules), adopted May 7, 1934, II, III.

[8] Cf., *Palko* v. *Connecticut;* 302 U. S. 319, 325.

himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel. That which is simple, orderly and necessary to the lawyer, to the untrained layman may appear intricate, complex and mysterious. Consistently with the wise policy of the Sixth Amendment and other parts of our fundamental charter, this Court has pointed to " . . . . the humane policy of the modern criminal law . . ." which now provides that a defendant " . . . if he be poor, . . . may have counsel furnished him by the state . . . not infrequently . . . more able than the attorney for the state." [9]

The " . . . right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defence, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him." [10] The Sixth Amendment withholds from federal courts,[11] in all criminal proceedings, the power and authority to deprive an accused of his life or liberty unless he has or waives the assistance of counsel.

[9] *Patton* v. *United States*, 281 U. S. 276, 308.

[10] *Powell* v. *Alabama*, 287 U. S. 45, 68, 69.

[11] Cf., *Barron* v. *The Mayor*, 7 Pet. 243, 247; *Edwards* v. *Elliott*, 21 Wall. 532, 557.

*Two.* There is insistence here that petitioner waived this constitutional right. The District Court did not so find. It has been pointed out that "courts indulge every reasonable presumption against waiver" of fundamental constitutional rights [12] and that we "do not presume acquiescence in the loss of fundamental rights." [13] A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege. The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

*Patton* v. *United States,* 281 U. S. 276, decided that an accused may, under certain circumstances, consent to a jury of eleven and waive the right to trial and verdict by a constitutional jury of twelve men. The question of waiver was there considered on direct appeal from the conviction, and not by collateral attack on *habeas corpus.* However, that decision may be helpful in indicating how, and in what manner, an accused may—before his trial results in final judgment and conviction—waive the right to assistance of counsel. The *Patton* case noted approvingly a state court decision [14] pointing out that the humane policy of modern criminal law had altered conditions which had existed in the "days when the accused could not testify in his own behalf, [and] was not furnished Counsel," and which had made it possible to convict a man when he was "without money, without counsel, without ability to summon witnesses and not permitted to tell his own story; . . ."

[12] *Aetna Ins. Co.* v. *Kennedy,* 301 U. S. 389, 393; *Hodges* v. *Easton,* 106 U. S. 408, 412.

[13] *Ohio Bell Telephone Co.* v. *Public Utilities Comm'n,* 301 U. S. 292, 307.

[14] *Hack* v. *State,* 141 Wis. 346, 351; 124 N. W. 492.

The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused. While an accused may waive the right to counsel, whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record.

*Three.* The District Court, holding petitioner could not obtain relief by *habeas corpus*, said:

"It is unfortunate, if petitioners lost their right to a new trial through ignorance or negligence, but such misfortune cannot give this Court jurisdiction in a habeas corpus case to review and correct the errors complained of."

The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution. True, *habeas corpus* cannot be used as a means of reviewing errors of law and irregularities—not involving the question of jurisdiction—occurring during the course of trial;[15] and the "writ of *habeas corpus* cannot be used as a writ of error."[16] These principles, however, must be construed and applied so as to preserve—not destroy—constitutional safeguards of human life and liberty. The scope of inquiry in *habeas corpus* proceedings has been broadened—not narrowed—since the adoption of the Sixth

[15] Cf., *Ex parte Watkins*, 3 Pet. 193; *Knewal* v. *Egan*, 268 U. S. 442; *Harlan* v. *McGourin*, 218 U. S. 442.

[16] *Woolsey* v. *Best*, 299 U. S. 1, 2.

Amendment. In such a proceeding, "it would be clearly erroneous to confine the inquiry to the proceedings and judgment of the trial court"[17] and the petitioned court has "power to inquire with regard to the jurisdiction of the inferior court, either in respect to the subject matter or to the person, even if such inquiry . . . [involves] an examination of facts outside of, but not inconsistent with, the record."[18] Congress has expanded the rights of a petitioner for *habeas corpus*[19] and the "  . . . effect is to substitute for the bare legal review that seems to have been the limit of judicial authority under the common-law practice, and under the Act of 31 Car. II, c. 2, a more searching investigation, in which the applicant is put upon his oath to set forth the truth of the matter respecting the causes of his detention, and the court, upon determining the actual facts, is to 'dispose of the party as law and justice require.'

"There being no doubt of the authority of the Congress to thus liberalize the common law procedure on *habeas corpus* in order to safeguard the liberty of all persons within the jurisdiction of the United States against infringement through any violation of the Constitution or a law or treaty established thereunder, it results that under the sections cited a prisoner in custody pursuant to the final judgment of a state court of criminal jurisdiction may have a judicial inquiry in a court of the United States into the very truth and substance of the causes of his detention, although it may become necessary to look behind and beyond the record of his conviction to a sufficient extent to test the jurisdiction of the state court to proceed to a judgment against him. . . .

[17] *Frank* v. *Mangum*, 237 U. S. 309, 327.

[18] *In re Mayfield*, 141 U. S. 107, 116; *Cuddy, Petitioner*, 131 U. S. 280.

[19] 28 U. S. C., ch. 14, § 451, *et seq.*

" . . . it is open to the courts of the United States upon an application for a writ of *habeas corpus* to look beyond forms and inquire into the very substance of the matter, . . ." [20]

Petitioner, convicted and sentenced without the assistance of counsel, contends that he was ignorant of his right to counsel, and incapable of preserving his legal and constitutional rights during trial. Urging that—after conviction—he was unable to obtain a lawyer; was ignorant of the proceedings to obtain new trial or appeal and the time limits governing both; and that he did not possess the requisite skill or knowledge properly to conduct an appeal, he says that it was—as a practical matter—impossible for him to obtain relief by appeal. If these contentions be true in fact, it necessarily follows that no legal procedural remedy is available to grant relief for a violation of constitutional rights, unless the courts protect petitioner's rights by *habeas corpus*. Of the contention that the law provides no effective remedy for such a deprivation of rights affecting life and liberty, it may well be said—as in *Mooney* v. *Holohan,* 294 U. S. 103, 113—that it "falls with the premise." To deprive a citizen of his only effective remedy would not only be contrary to the "rudimentary demands of justice" [21] but destructive of a constitutional guaranty specifically designed to prevent injustice.

Since the Sixth Amendment constitutionally entitles one charged with crime to the assistance of counsel, compliance with this constitutional mandate is an essential jurisdictional prerequisite to a federal court's authority to deprive an accused of his life or liberty. When this

---

[20] *Frank* v. *Mangum, supra,* 330, 331; cf., *Moore* v. *Dempsey,* 261 U. S. 86; *Mooney* v. *Holohan,* 294 U. S. 103; *Hans Nielsen, Petitioner,* 131 U. S. 176.

[21] Cf., *Mooney* v. *Holohan, supra,* 112.

468

right is properly waived, the assistance of counsel is no longer a necessary element of the court's jurisdiction to proceed to conviction and sentence. If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost "in the course of the proceedings" due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake.[22] If this requirement of the Sixth Amendment is not complied with, the court no longer has jurisdiction to proceed. The judgment of conviction pronounced by a court without jurisdiction is void, and one imprisoned thereunder may obtain release by *habeas corpus*.[23] A judge of the United States—to whom a petition for *habeas corpus* is addressed—should be alert to examine "the facts for himself when if true as alleged they make the trial absolutely void." [24]

It must be remembered, however, that a judgment can not be lightly set aside by collateral attack, even on *habeas corpus*. When collaterally attacked, the judgment of a court carries with it a presumption of regularity.[25] Where a defendant, without counsel, acquiesces in a trial resulting in his conviction and later seeks release by the extraordinary remedy of *habeas corpus*, the burden of proof rests upon him to establish that he did not competently and intelligently waive his constitutional

[22] Cf., *Frank* v. *Mangum, supra*, 327.

[23] *Hans Nielsen, Petitioner, supra.*

[24] Cf., *Moore* v. *Dempsey*, 261 U. S. 86, 92; *Patton* v. *United States*, 281 U. S. 276, 312, 313.

[25] *Cuddy, Petitioner, supra*

right to assistance of counsel. If in a *habeas corpus* hearing, he does meet this burden and convinces the court by a preponderance of evidence that he neither had counsel nor properly waived his constitutional right to counsel, it is the duty of the court to grant the writ.

In this case, petitioner was convicted without enjoying the assistance of counsel. Believing *habeas corpus* was not an available remedy, the District Court below made no findings as to waiver by petitioner. In this state of the record we deem it necessary to remand the cause. If—on remand—the District Court finds from all of the evidence that petitioner has sustained the burden of proof resting upon him and that he did not competently and intelligently waive his right to counsel, it will follow that the trial court did not have jurisdiction to proceed to judgment and conviction of petitioner, and he will therefore be entitled to have his petition granted. If petitioner fails to sustain this burden, he is not entitled to the writ.

The cause is reversed and remanded to the District Court for action in harmony with this opinion.

*Reversed.*

Mr. Justice Reed concurs in the reversal.

Mr. Justice McReynolds is of opinion that the judgment of the court below should be affirmed.

Mr. Justice Butler is of the opinion that the record shows that petitioner waived the right to have counsel, that the trial court had jurisdiction, and that the judgment of the Circuit Court of Appeals should be affirmed.

Mr. Justice Cardozo took no part in the consideration or decision of this case.