George A. GORDON, Petitioner,

v.

C. E. BREAZEALE, Superintendent of the Mississippi State Penitentiary, Respondent.

No. GC645.

United States District Court
N. D. Mississippi,
Greenville Division.

Sept. 15, 1965.

R. Jess Brown, Jackson, Miss., Melvin L. Wulf, New York City, for petitioner.

Joe T. Patterson, Atty. Gen. of Mississippi, Garland Lyell, Asst. Atty. Gen., Jackson, Miss., Harvey Buck, Dist. Atty., West Point, Miss., George Everett, Dist. Atty., Greenwood, Miss., for respondent.

CLAYTON, District Judge.

Petitioner, George A. Gordon, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c) (3), asserting that he is in custody by virtue of a judgment of a state court in violation of the Constitution of the United States. Gordon was convicted and sentenced to death for the crime of rape and now contends that he was deprived of due process of law and the equal protection of the laws in the criminal proceedings against him in the courts of the State of Mississippi. The state court record was supplemented here by an evidentiary hearing, and opposing counsel submitted the issues in oral arguments and in memorandum briefs. Significant basic facts with respect to some of the issues were eliminated from controversy by way of stipulation.

Gordon was first convicted and sentenced to death on the verdict of a jury in the Circuit Court of Lowndes County, Mississippi, after the trial court had overruled defense motions to quash the indictment and the special venire on the ground that members of the Negro race, of which petitioner is a member, had been systematically excluded from the grand and petit juries which indicted and tried petitioner. This judgment, which had been rendered in December, 1961, was reversed by the Supreme Court of Mississippi on the ground that the motions to quash should have been sustained. Gordon v. State, 243 Miss. 750, 140 So.2d 88 (1962). On remand, a second grand jury again indicted Gordon and a second trial produced another conviction and sentence of death, on June 17, 1963.

Court appointed defense counsel, who were the same for both trials, did not raise the jury exclusion issue at any point in the second trial and appeal, and the state supreme court affirmed the conviction. Gordon v. State, Miss., 149 So.2d 475 (1963). New counsel entered the case at this stage and unsuccessfully petitioned the United States Supreme Court for certiorari. Gordon v. Mississippi, 374 U.S. 852, 83 S.Ct.1918, 10 L. Ed.2d 1072 (1963). An application was then filed in the state supreme court, pursuant to Mississippi Code Annotated 1942 (Recompiled) § 1992.5, for leave to file in the circuit court a petition for writ of error coram nobis. The grounds urged in that application were similar to those advanced both in the petition for certiorari and in the petition to this court, and included, inter alia, an attack on the alleged racial defects of the grand and petit juries. All grounds urged, however, were denied by the court, including those with respect to the juries. As to these last grounds, it was held that the failure of defense counsel to make a timely presentation of the charge of systematic exclusion on the second trial constituted a waiver, and that the composition of the juries was not open to collateral attack. Gordon v. State, Miss., 160 So.2d 73 (1964). At this point, the instant petition was filed in this court.

Respondent denies that Negroes were systematically excluded from the grand jury which returned the second indictment against petitioner and from the petit jury which tried him, and contends that these juries were legally and validly constituted according to state and federal law. The Supreme Court of Mississippi having held on the appeal from the first conviction that systematic exclusion had been practiced prior to and at the time of the first indictment and trial, the principal issue now presented is whether the responsible state officials have purged the jury system of its racial defects since that decision.

The parties agree that at least from 1900 through 1961 (the year of the first trial) there were no Negroes on the jury lists. They also agree that in 1962, the year intervening between the two trials, three Negroes were placed on the 687 man jury list (less than one-half of one percent of the total) and that in the year of the indictment and trial which brought about this petition, 1963, there were five Negroes on the 680 man jury list (less than one percent of the total). Lowndes County is shown by the 1960 census to have a total population of 46,614, of whom 17,743 were Negroes. Jury age males totaled 11,884, of whom 3,745, or approximately 32% of the total, were Negroes. The record does not disclose any substantial evidence from which it could reasonably be inferred that the practice since the first trial amounted to any more than token summoning of Negroes for jury service, or which can explain the wide disparity between the proportion of Negroes among jury age males and the proportion of Negroes summoned, on any basis other than systematic exclusion of that race from jury service.

 A conviction of a Negro defendant following indictment by a grand jury and trial by a petit jury from which Negroes have been systematically excluded constitutes a denial of both due process and equal protection of the law, and cannot stand. Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1879); Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947). Very decided variations between racial proportions on the jury lists and racial proportions in the population, unexplained and long continued, establish a prima facie case of systematic exclusion of Negroes from jury service, placing the burden on respondent to refute such evidence by showing an adequate justification for the long continued racial disparity. United States ex rel. Seals v. Wiman, 304 F.2d 53 (5th Cir. 1962). Token summoning of Negroes for jury service neither meets that burden nor complies with the constitutional standard. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

 Petitioner established a prima facie case of systematic exclusion of Negroes from the jury system. Respondent did not carry the burden of refuting it, and it follows that this court must hold that petitioner was deprived of due process and equal protection of the laws by his second conviction. Indeed, the recent decision of the Supreme Court of Mississippi in Harper v. State, 251 Miss. 699, 171 So.2d 129 (1965) demonstrates that the state court would have reached the same result on Gordon's second appeal as it reached on his first, if the issue of jury exclusion had been presented to it, and that he would have been afforded collateral relief in the state courts, except for the state supreme court's view that such a course was closed by the doctrine of waiver. If that view must prevail here, the decision that petitioner suffered a denial of his constitutional rights would not authorize the relief sought.

 The state court's finding of an effective waiver is entitled to respect but does not prevent independent determination of that question by this court now, since waiver affecting federal rights is a federal question. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). That question may be resolved against petitioner only if the court discerns that there was "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The court may find that an applicant for habeas corpus intentionally relinquished or abandoned the right in question only if it appears that he understandingly and knowingly refrained from seeking to vindicate his federal claims in the state courts so as to deliberately bypass state procedures. There must have been a considered choice by the accused, rather than a choice made only by counsel in which petitioner did not participate. Fay v. Noia, supra.

Waiver of federal rights in state criminal proceedings as an impediment to

collateral relief through federal habeas corpus has been the subject of four significant decisions of the Court of Appeals for this circuit. United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir. 1959); United States ex rel. Seals v. Wiman, supra; Whitus v. Balkcom, 333 F.2d 496 (5th Cir. 1964); and Cobb v. Balkcom, 339 F.2d 95 (5th Cir. 1964). In each of these a Negro defendant had been convicted of a capital crime in the state courts and sentenced to death. Systematic exclusion of Negroes from both the grand and petit juries was established in each case, but in none of the cases were direct attacks on this deprivation of constitutional rights made in the state courts within the time prescribed by state law. In the first case, an effective waiver of the right to challenge the grand jury's composition was found by the Court of Appeals, but no such waiver was found with respect to the trial jury, and the conviction was held to be void. In the remaining three cases, no effective waiver was found with respect to either the grand or petit juries.

In the last of the four, Cobb v. Balkcom, supra, the court reviewed the first three and interpreted them as establishing three situations in cases of this nature in which a state criminal defendant's failure to object to jury composition will not constitute a waiver barring relief on federal habeas corpus. In substance, these three situations appear to be as follows:

1) In *Goldsby* it was established that whether defendant's attorney knows the facts or not which would support such an attack on the jury system and does not consult with defendant, this without more prevents a finding of waiver with respect to the petit jury, but may permit a finding of waiver as to the grand jury.

2) *Seals* stands for the proposition that where the facts which would support such an attack on the jury system are unknown to the defense and not easily ascertainable, and defendant's attorney fails to consult with defendant, there would be no waiver as to either jury.

3) In *Whitus* it was held that without regard to consultation between defendant and his attorney, if there is evidence that defendant's attorney refrained from objecting to the racial composition of the juries through fear of engendering hostility toward the Negro defendant, there could be no voluntary election to waive this right based on meaningful alternatives, and no waiver could be found as to either jury.

The fourth case, Cobb v. Balkcom, supra, was said by the court to be controlled by *Goldsby*. However, no waiver was found as to either jury, which the court explained as being a result of the age and inexperience of the accused, the fact that he did not have a lawyer until after return of the indictment, and the known illegal composition of the grand jury. Cobb, who had been convicted of murder, was a Negro, the sixth of nine children living with his widowed mother on the farm owned by his victim, and was fifteen years old at the time of his trial. Although the court characterized that case as falling in the first of the three situations described above, it would appear to be accurate to classify *Cobb* as a fourth situation in itself.

In the case before this court, petitioner was twenty years old at the time of his second conviction and had an eighth grade education. His work experience may be categorized as agricultural labor. The crime with which he was charged was capital; moreover, it was the type most likely to inflame racial passions— the rape of a white woman by a Negro. Although his court appointed attorney explained to him prior to the second trial that his first conviction had been set aside because of systematic exclusion of Negroes, the record contains no refutation of petitioner's testimony that the attorney did not consult with him concerning the decision not to make the same attack on the second trial, and thus it is not controverted that there was no express waiver by petitioner as to the defects of either the grand or petit juries. It is obvious that, having successfully appealed the first conviction for system-

atic exclusion, the attorney knew the facts which would support a second attack.

■ The absence of express waiver of the right to collaterally attack the racial defects of the trial jury is alone sufficient to support a finding that petitioner did not effectively waive that right. United States ex rel. Goldsby v. Harpole, supra. Accordingly, the conviction must be set aside. The more difficult question is whether these facts support a finding that petitioner did not effectively waive the right to collaterally attack the composition of the grand jury.

■ With respect to the grand jury, the question is whether a twenty year old Negro laborer with an eighth grade education, who is brought to trial for the rape of a white woman in a court where Negroes are systematically excluded from jury service, is bound by the decision of his attorney not to make a timely challenge to the composition of the grand jury, when the attorney has timely knowledge of the facts supporting such a challenge but has not consulted with the accused concerning this right.

United States ex rel. Goldsby v. Harpole, supra, and United States ex rel. Seals v. Wiman, supra, appear to be adverse to petitioner on this point, for the defense had knowledge of the facts which would support a grand jury challenge. Whitus v. Balkcom, supra, contained positive evidence that counsel's decision to refrain from a jury challenge was based on the apprehension that the right of the accused to a fair trial would be thereby imperiled. Not only is there no such evidence in this case, the conclusion that this element is present appears to be rebutted by the conduct of petitioner's able attorney in the first trial. Thus, on this record, the first three decisions mentioned above do not seem to clearly prevent a finding that petitioner effectively waived the right to collaterally attack the composition of the grand jury.

The fourth decision, Cobb v. Balkcom, supra, goes farther. In fact, the successive decisions evince an increasing judi-cial reluctance to find effective waivers of fundamental rights, whether they affect the remote and less critical right with respect to the grand jury or the crucial right to a racially nondiscriminatory trial jury. Significantly, the latter two opinions were written after the Supreme Court's decision of Fay v. Noia, supra. The separate criteria for finding waiver as to the trial jury and as to the grand jury, made effective in United States ex rel. Goldsby v. Harpole, supra, in 1959, have been practically merged into a single criterion through the impact of Fay v. Noia, coupled with intra-circuit development of the law.

It is difficult to make a meaningful distinction between the situation in Cobb v. Balkcom, supra, and the facts here. In both cases, systematic exclusion of Negroes from the grand jury was established. Both Cobb and Gordon were Negro agricultural laborers. Cobb was fifteen and Gordon twenty at the time of their respective trials. Neither was experienced with judicial processes. There is a distinction in that Gordon was represented by counsel prior to return of the indictment and Cobb was not. However, the court concludes that at this stage of the development of the law, this distinction is not sufficient to require a different result, in light of the apparent merger of criteria with respect to the two types of juries, noted above. Gordon's waiver as to the grand jury was no more effective than Cobb's. Petitioner did not knowingly and understandingly forego the privilege of seeking to vindicate his federal right to a racially non-discriminatory grand jury so as to deliberately bypass the state procedure. No waiver was effective as to either jury, and petitioner may vindicate those rights here.

■ The systematic exclusion of Negroes from the grand jury which indicted petitioner and the petit jury which tried him requires that his conviction be declared unconstitutional and that it be set aside. Other grounds asserted by petitioner need not be considered, and their disposition is left to the state courts

in the event that the state elects to re-indict and re-try him. Gordon is now legally detained by the state to await the action of another grand jury, but he is entitled to be re-tried within a reasonable time, and jurisdiction will be retained to meet the unlikely event that further orders may be necessary or proper. It now appears that a period of one year from the entry of this judgment or its final test by appeal, certiorari or otherwise, will be sufficient to afford the State of Mississippi an opportunity to take the necessary steps to re-indict and re-try petitioner, in a manner consistent with the Constitution.

If Gordon is again brought to trial in the state courts, any questions which may arise as to the legality or constitutionality of the indictment or trial should be decided not by this court, but in the regular course by the courts of the State of Mississippi, subject to possible review by the United States Supreme Court.

An order will be entered granting the writ of habeas corpus to the extent stated.