Willie Lee **HENDERSON**, Petitioner-Appellee,

v.

Lewis S. **TOLLETT**, Warden, Brushy Mountain State Farm, Respondent-Appellant.

No. 71–1451.

United States Court of Appeals, Sixth Circuit.

April 20, 1972.

H. Fred Hoefle, Cincinnati, Ohio (Court appointed), for appellee.

R. Jackson Rose, Nashville, Tenn., for appellant; David M. Pack, Atty. Gen., of counsel.

Before PHILLIPS, Chief Judge, and CELEBREZZE and MILLER, Circuit Judges.

CELEBREZZE, Circuit Judge.

This is an appeal from a decision of the United States District Court for the Middle District of Tennessee, granting a petition for habeas corpus.

On January 22, 1948 a Nashville, Tenn. liquor store employee was shot and seriously wounded in an abortive hold-up attempt. Police arrested Petitioner, Willie Lee Henderson, a Negro and two other men, in connection with the crime. The three were charged with robbery and attempted murder. When the hold-up victim died several weeks later, first degree murder indictments were handed up against all three men by the Davidson County Grand Jury.

Without seeking the advice of counsel on this matter, Petitioner signed a confession acknowledging his participation in the robbery attempt and the shooting. Although he initially wanted to plead not guilty Henderson was eventually persuaded by counsel retained by his mother to enter a guilty plea. He did so in March, 1948 and was sentenced to a ninety-nine year prison term pursuant to a plea bargain arranged by his attorney. He was still serving that sentence at the time he sought federal habeas corpus relief.

Neither Henderson nor his counsel objected to the exclusion of Negroes from the Grand Jury which indicted Petitioner. Although Henderson sought habeas corpus relief in state and federal courts in 1964 he did not raise the systematic exclusion question at that time.[1] Such claim was included in a 1967 state habeas corpus petition which was denied by the state trial court without a hearing. Upon review of that decision the Tennessee Supreme Court ordered that an evidentiary hearing be held on the issue. On remand the trial court found that no pattern of systematic exclusion had been shown and again denied Petitioner any relief. The Tennessee Court of Criminal Appeals affirmed by a divided vote. It based its decision entirely on what it found to be the waiver created by Petitioner's failure to raise the claim of systematic exclusion before pleading to the indictment and by his plea of guilty itself. The Tennessee Supreme Court declined to review the decision.

Henderson, having exhausted his state remedies on the question then sought federal habeas corpus relief in the District Court. His petition raised several grounds for relief, but the District Court properly considered only the matter of systematic exclusion of Negroes

1. In those earlier pro se petitions he did claim that his confession had been coerced and that his plea of guilty was therefore involuntary. He also asserted that he had been denied the assistance of counsel. The District Court considered these claims and decided them adversely to the Petitioner on the merits. We affirmed. Henderson v. Henderson, 6th Cir. # 17855 (1968), cert. denied 391 U.S. 927, 88 S.Ct. 1829, 20 L.Ed.2d 667 (1968).

We note that although the involuntary plea and ineffective assistance of counsel claims would have relevance to this case they have not properly been raised by Petitioner in connection with his present application for relief. We note, too, that were these claims properly before us we could find them unavailable to support a finding in Petitioner's favor in light of the prior adverse adjudication. See Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); 28 U.S.C. § 2244. The present posture of the case does not require us to rule on the matter of preclusion, however.

from the Davidson County Grand Jury. It reviewed the testimony offered at the state evidentiary hearing and concluded that a pattern of sytematic exclusion of Negroes from the Davidson County Grand Jury in 1948 had, in fact, been shown. It was also held that Petitioner had not waived his right to challenge the indictment handed up by such a grand jury. Accordingly, the District Court ordered Petitioner's release. This appeal followed.

For nearly a century it has been plain that "a criminal defendant is denied the equal protection of the laws guaranteed by the Fourteenth Amendment if he is indicted by a grand jury . . . from which members of his race have been excluded because of their race." Eubanks v. Louisiana, 356 U.S. 584, 585, 78 S.Ct. 970, 972, 2 L.Ed.2d 991 (1958); Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664 (1880); Patton v. Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76 (1947). It is plain that the evidence in this case fully supports the District Court's finding that Negroes were systematically excluded from the Davidson County Grand Jury at the time the indictment against Petitioner was handed up.[2] The Respondent does not contest the finding of impermissible exclusion on appeal; he bases the appeal entirely on the claim that Henderson waived any right to attack the indictment because he did not make his challenge before pleading to the charges and because he pled guilty to the indictment.

Tennessee courts have consistently ruled that a challenge to the composition of the grand jury venire must be made by motion or plea in abatement before any plea to the indictment is entered.

Failure to make such a challenge waives any objection under Tennessee law. *See* State ex rel. Lawrence v. Henderson, 433 S.W.2d 96, 101 (Tenn.Ct.Crim.App., 1968) and cases cited therein.

A "state court's finding of waiver" does not, however "bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question." Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). In making that independent determination the federal courts must apply the "classic" definition of waiver: Did the defendant's conduct amount to "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L. Ed. 1461 (1938); Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837.

Respondent initially suggests that it is inappropriate to apply the "classic" definition here, apparently because he does not believe that the equal protection right in question warrants the scrupulous protection which that definition and the accompanying "presumption against waiver" would provide. *See* Johnson v. Zerbst, *supra,* 304 U.S. at 464, 58 S.Ct. 1019.

Nothing in Fay v. Noia suggests that the Supreme Court intended to establish a hierachy of constitutional protections and limit the applicability of the classic definition of waiver to those rights occupying the highest positions. The decision speaks only of "waivers affecting federal rights," Fay v. Noia, *supra,* 373 U.S. at 439, 83 S.Ct. 822; it does not distinguish among those rights. Since that decision was handed down three Circuit

2. The evidence showed that no Negro had served on the Davidson County Grand Jury in the years prior to 1948 and that no Negro was to serve on that panel until 1953, when a single Negro was called to duty: this despite the fact that Negroes made up over 25% of Davidson County's population. An explanation for this startling disparity may be found in the evidence. Proof at the hearing showed that whenever a Negro citizen's name appeared in the venire list from which grand jurors were selected by the county judges, a "c" or "col" abbreviation was placed before his name; officials were thus provided with a simple means of determining which citizens might be appropriately "excused" from grand jury duty. It is apparent from the absence of any Negroes on the grand jury panels that the means were used and the impermissible end of exclusion accomplished.

Courts have been asked to decide whether a particular habeas petitioner's conduct constituted a waiver of his equal protection right to indictment by a grand jury from which members of his race have not been systematically excluded. Each Circuit has applied the Johnson v. Zerbst standard in answering that question. McNeil v. State of North Carolina, 368 F.2d 313 (4th Cir. 1966); Cobb v. Balkcom, 339 F.2d 95 (5th Cir. 1964); Wade v. Yeager, 377 F.2d 841, 846 (3rd Cir. 1967) cert. den. 393 U.S. 893, 89 S.Ct. 218, 21 L.Ed.2d 173 (1968).[3] We see no justification whatever for applying a less rigorous standard here.

█. When the Johnson v. Zerbst standard is applied it becomes clear that Petitioner's failure to raise an objection to the grand jury selection process could not have been an intentional abandonment of a known right. Petitioner was himself unaware that he had any such right at the time of his plea. Given the fact that he was then twenty years old, had received less than a sixth grade education and was not informed of such right by counsel this lack of knowledge is hardly surprising. Waiver, if it is to be found here would have to be predicated upon the knowledge and conduct of Petitioner's retained counsel.

While Fay v. Noia, *supra,* indicated that "a choice made by counsel not participated in by the petitioner does not automatically bar relief," 372 U.S. at 439, 83 S.Ct. at 849, that decision does not require that the criminal defendant be consulted in every situation before a valid waiver can be effected. Certainly such consultation would be useless where, as here, the Petitioner's "frame of reference could not have included any comprehension of the traditional constitutional rights incident to a fair trial." Whitus v. Balkcom, 333 F.2d 496, 503 (5th Cir. 1964), cert. den. 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (1964).

If the conduct of counsel is, by itself, to waive a constitutional right held by the defendant, however, it would seem that at a minimum counsel's actions should involve "a deliberate choice of strategy" amounting to an intentional "bypassing" of state procedures. Henry v. Mississippi, 379 U.S. 443, 451, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Fay v. Noia, *supra,* 372 U.S. at 438, 83 S.Ct. 822.

Any discussion of tactical calculation is clearly inappropriate here. Petitioner's counsel testified at the evidentiary hearing that he never thought of the "possibility" of objecting to the systematic exclusion of Negroes from the Davidson County Grand Jury. Judge Galbreath, concurring in the decision of the Tennessee Court of Criminal Appeals denying Petitioner relief, felt compelled to comment: "No lawyer in this State would have ever thought of objecting to the fact that Negroes did not serve on the Grand Jury in Tennessee in 1948." State ex rel. Henderson v. Russell, 459 S.W.2d 176, 179 (Tenn.Ct.Crim.App. 1970). This statement from a Tennessee Appellate Judge makes all the more credible the claim that Petitioner's attorney was without knowledge of the right to challenge the indictment when

3. In the years prior to the Supreme Court's decision in Fay v. Noia, both the Fourth and Fifth Circuits had apparently employed a test somewhat less rigorous than that of Johnson v. Zerbst, in determining whether or not a habeas petitioner had waived his right to challenge the grand jury selection process. See United States ex rel. Jackson v. Brady, 133 F.2d 476 (4th Cir. 1943), cert. den. 319 U.S. 746, 63 S.Ct. 1029, 87 L.Ed. 1702 (1943); United States ex rel. Goldsby v. Harpole, 263 F.2d 71 (5th Cir. 1959), cert. den. 361 U.S. 838, 80 S.Ct. 58, 4 L.Ed.2d 78 (1959). The Fourth Circuit explicitly recognized that Fay v. Noia required a stricter definition of waiver in McNeil v. State of North Carolina, 368 F.2d at 316. The Fifth Circuit has implicitly reached the same result in its post Fay v. Noia cases, such as Cobb v. Balkcom, 339 F.2d 95 and Colson v. Smith, 438 F.2d 1075 (1971). See also, the discussion of the application of the Johnson v. Zerbst rule to grand jury challenges in the Fifth Circuit contained in Gordon v. Breazeale, 246 F.Supp. 2, 7 (N.D.Miss.1965).

he advised his client to plead to the charges without objection to the grand jury venire.

When neither attorney nor client have any knowledge whatever of the right assertedly waived, it is clear that the Johnson v. Zerbst standard for waiver has not been met. Such is the case here. Accordingly we hold that Petitioner's failure to object to the indictment returned by an all-white grand jury before entering a plea did not waive his right to challenge the composition of that grand jury in subsequent federal habeas proceedings.

It is suggested, however, that apart from the mere failure to challenge the grand jury composition Petitioner also acted to affirmatively waive his right to make such challenge by pleading guilty to the indictment.

It is the general rule in this Circuit, as elsewhere, that a voluntary plea of guilty made by an accused while represented by competent counsel, waives all non-jurisdictional[4] defects. Austin v. Perini, 434 F.2d 752 (6th Cir. 1970); Reed v. Henderson, 385 F.2d 995 (6th Cir. 1967); Crockett v. Haskins, 372 F. 2d 475 (6th Cir. 1966); Caldwell v. Maxwell, 357 F.2d 646 (6th Cir. 1966).

But while there is merit to the general rule that a guilty plea in a state court waives a defendant's right to raise in the federal courts alleged non-jurisdictional defects, we must be wary of blindly applying this doctrine to every case involving such a plea. There is nothing inherent in the nature of a plea of guilty which ipso facto renders it a waiver of a defendant's constitutional claims. Rather, waiver is presumed because ordinarily such a plea is an indication by the defendant that he has deliberately failed or refused to raise his claims by available state procedures; therefore, principles of comity and the interests of orderly federal-state relations require that he should not be allowed to present these claims to the federal courts. United States ex rel. Rogers v. Warden of Attica State Prison, 381 F.2d 209, 213 (2d Cir. 1967).

The rule set out in Austin v. Perini, *supra,* and innumerable other cases simply recognizes the fact that a voluntary guilty plea, entered upon the advice of competent counsel usually implies an intentional and knowing abandonment of rights. United States ex rel. Rogers v. Warden of Attica State Prison, *supra*; (cf. the position of Wisdom, J. in United States v. Lucia, 423 F.2d 697 (5th Cir. en banc 1970) cert. den. 402 U.S. 943, 91 S.Ct. 1607, 29 L. Ed.2d 111 (1971) reaffirming his own belief in the principles announced by him in an earlier disposition of that case, 416 F.2d 920, 923 (5th Cir. 1969)). This presumption should not be lightly

4. While the failure of an indictment to state an offense has been held jurisdictional, other defects in the grand jury process are non-jurisdictional in nature and subject to waiver. Michener v. United States, 170 F.2d 973 (8th Cir. 1948). The Fifth Circuit has implicitly held that the precise sort of challenge undertaken in the present case deals with a non-jurisdictional defect since it has held the right waived by a guilty plea in a situation where the presumption of intentional abandonment (see text above) was apparently appropriate. See Hunt v. State of Georgia, 445 F.2d 1228 (5th Cir. 1971); cf. Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971). We agree that the defect attacked here is non-jurisdictional and a challenge to it may be waived by a plea of guilty under certain circumstances.

Further we do not believe that the effect of a guilty plea can be totally avoided in this case by calling the indictment here void rather than voidable. The Tennessee cases cited by the District Court do not seem to support this proposition, one which the Tennessee Court of Criminal Appeals necessarily rejected in affirming the denial of state habeas corpus relief to Petitioner. Declaring void any indictment prepared by any improperly constituted grand jury would, in any event, result in a dislocation of the criminal process entirely out of keeping with the harm done in the great majority of cases where a flaw far less dangerous to the integrity of the criminal process than racial exclusion has been found.

set aside; but in those few situations where evidence suggests that the presumption is unreliable an inquiry must be made into all the underlying circumstances surrounding the asserted waiver.[5] Our own doubt that a Negro defendant would know of his right to challenge a racially exclusive grand jury selection process in the Tennessee of 1948, together with the suggestion of Judge Galbreath that members of the Bar would have been equally unaware of the right suggests that this is one of those rare cases where the value of the guilty plea as presumptive evidence of waiver is minimal. The testimony of Petitioner's counsel as to his own unawareness of the right to challenge the grand jury selection process convinces us that the presumption bore no relation whatever to reality in this unusual situation. Courts have consistently recognized that where both petitioner and counsel are without knowledge[6] of a

5. Such flexibility is not barred by the Supreme Court's recent decisions in Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 749, 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), or Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) (cf. North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); Austin v. Perini, 434 F.2d 752 (6th Cir. 1970)). In those cases the Court considered whether inaccurate legal advice as to the admissibility of confessions and the constitutionality of a particular penalty scheme supplied sufficient evidence of involuntariness or unintelligence as to render invalid a defendant's plea of guilty. The Court decided that such evidence alone was insufficient to invalidate the plea, where the advice given by counsel "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. at 771, 90 S.Ct. at 1449.

That line of cases did not establish a new general test for examining conduct alleged to constitute a waiver of federal rights; in fact it reemphasized the importance of Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), as the governing authority on the subject. See Brady v. United States, 397 U.S. at 748 n. 6, 90 S.Ct. 1463. It did not suggest that a valid guilty plea waived the right to challenge all pre-pleading defects when a defendant neither knew nor could have known of the right at the time he entered his plea. It did not deal with a situation in which counsel's advice was competent judged by the time and place at which it was given, but grossly inadequate in light of the clearly established constitutional law of the period.

The *Brady* line of cases dealt only with challenges to the guilty plea itself; no such challenge has been made here. Given the uniqueness of the concerns which necessarily affect any evaluation of the validity of a guilty plea in our system (see *Brady*, 397 U.S. at 749–759, 90 S.Ct. 1463; *McMann*, 397 U.S. at 774, 90 S.Ct. 1441) the *Brady* line of cases cannot provide a useful model for the practical application of the Johnson v. Zerbst standards in general. See the excellent discussion of this point in United States v. Liguori, 430 F.2d 842 (2d Cir. 1970); cf. Seogin v. United States, 446 F.2d 416 (8th Cir. 1971); Bannister v. United States, 446 F.2d 1250 (3d Cir. 1971).

6. Conceivably the lack of knowledge here might be traced to incompetent counsel. Were we to so hold there would be no need to discard the presumptive value of the guilty plea since one of the conditions precedent to the creation of such presumption would not have been satisfied. Holding that Petitioner received ineffective assistance of counsel would be a difficult thing to do here, however, even were we completely free to do so (see n.1 *supra*). It seems evident that Petitioner received the same advice on this point that he would have received from most other lawyers in Tennessee in 1948. The Fifth Circuit has held an attorney's failure to inform his client of the right to challenge an improperly selected grand jury to constitute ineffective assistance of counsel, Windom v. Cook, 423 F.2d 721 (5th Cir. 1970), but that decision apparently dealt with a more recent time, when raising such a claim might be more realistically expected of an attorney in the South.

Whether Petitioner's lack of knowledge on the matter of the invalidity of the grand jury selection process resulted from incompetent counsel or simply from a too-long tolerated gap between the requirements of the Constitution and realities of Tennessee Criminal practice the result was the same: Petitioner was denied an opportunity to raise a claim which might effectively have barred his prosecution.

substantial constitutional right that right is not waived even by a guilty plea. *See* United States v. Michael,[7] 426 F.2d 1066 (7th Cir. 1970); Scogin v. United States, 446 F.2d 416 (8th Cir. 1971); Bannister v. United States, 446 F.2d 1250 (3d Cir. 1971); United States v. Liguori, 430 F.2d 842 (2d Cir. 1970 cert. den. 402 U.S. 948, 91 S.Ct. 1614, 29 L.Ed.2d 118 (1971)). In each of the cases just cited defendants sought to raise a right granted to persons in their situations by a decision of the Supreme Court handed down after they had entered guilty pleas to criminal charges. In each case the Court of Appeals involved held that a petitioner could not have knowingly relinquished a right of whose existence he was unaware at the time he was asked to plead. The Courts accordingly refused to find that any waiver had occurred despite the guilty pleas.

While we cannot term the right here a "new" one—to do so would ignore a line of cases stretching back to 1880 —it is clear that the present Petitioner was as effectively and excusably ignorant of the right as if it had never been announced. Under the unique circumstances of this case we cannot find that his plea of guilty waived his right to challenge the grand jury selection process by means of federal habeas corpus. *See also* Muniz v. Beto, 434 F.2d 697 (5th Cir. 1970); Ellzey v. Breazeale, 277 F.Supp. 948 (S.D.Miss.1967); Gordon v. Breazeale, 246 F.Supp. 2 (N.D. Miss.1965).

Accordingly we affirm the District Court's decision ordering Petitioner's release. The State of course may seek reindictment of Petitioner by a properly constituted grand jury. Such grand jury proceedings and the resulting trial,

if any, should be commenced within a reasonable period after the entry of this judgment or other final determination of this matter. In the event of a conviction Petitioner must be credited with the time already served.

Affirmed.

7. In United States v. Michael, the Court of Appeals for the Seventh Circuit, in dealing with a waiver allegedly created by petitioner's failure to raise a self-incrimination defense unknown to him at the time he entered a guilty plea stated: [Petitioner's] failure to assert [a] defense [unknown] to him at the time he pleaded guilty, was not such an "intentional relinquishment or abandonment of a known right or privilege" as to overcome the presumption against waiver of fundamental constitutional rights. 426 F.2d 1067, 1069 (1970).