Charles Lee PARKER, Appellee,

v.

Fred R. ROSS, Superintendent of Caledonia Correctional Unit, Appellant.

No. 71-1925.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 3, 1972.

Decided Dec. 20, 1972.

Jacob L. Safron, Asst. Atty. Gen. of N. C. (Robert Morgan, Atty. Gen. of N. C., on brief), for appellant.

Norman B. Smith, Greensboro, N. C. (Court-appointed counsel) [Smith, Patterson, Follin & Curtis, Greensboro, N. C., on brief], for appellee.

Before BOREMAN and BRYAN, Senior Circuit Judges, and CRAVEN, Circuit Judge.

CRAVEN, Circuit Judge:

■■ Appellant Parker is the Parker in the *Brady-McMann-Parker* trilogy.[1] The Supreme Court has previously rejected Parker's contention that he should be granted a new trial and allowed to plead again because his guilty plea was the product of a coerced confession and his fear of the death penalty. Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970). Because of an adequate state ground, the Supreme Court declined to consider and left open Parker's contention that he is belatedly entitled to withdraw his guilty plea for the reason that the indictment was invalid because members of his race (Negro) had been systematically excluded from the grand jury. It is this question that is presented us by the state's appeal from the granting of habeas relief by the district court. We think that an "intelligent and voluntary"

1. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); Parker v. North Carolina, 397 U.S. 790, 90 S. Ct. 1458, 25 L.Ed.2d 785 (1970).

guilty plea[2] blocks a subsequent attack on the composition of a grand jury, and we reverse the decision of the district court, 330 F.Supp. 13, granting relief on the ground of racial discrimination in the selection of the grand jury that indicted Parker.

On July 16, 1964, Parker, a 15-year-old Negro, was arrested and subsequently indicted for first degree burglary. After consulting with both his privately retained counsel and his mother, he entered a plea of guilty. The Superior Court of Halifax County, North Carolina, accepted the plea and imposed the mandatory sentence of life imprisonment.

Following his conviction, Parker filed in 1967 an application for post-conviction relief in a North Carolina court. In the application he claimed that the grand jury that indicted him was unconstitutionally impaneled because the jury selection procedure systematically excluded members of his race. The highest state court in which he could seek review determined that under North Carolina procedural law, N.C.G.S. § 9–23, objection to the composition of a grand jury is waived unless raised before entry of a guilty plea. Accordingly, since Parker did not raise the issue until the filing of his post-conviction application, the state court refused to consider the claim of systematic exclusion and affirmed the conviction. Parker v. State of North Carolina, 2 N.C.App. 27, 162 S.E.2d 526 (1968), aff'd, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

Thereafter, Parker filed a federal petition for habeas corpus pursuant to 28 U.S.C. § 2254, again complaining of systematic exclusion of Negroes from his grand jury. The district court, not bound by the adequate state ground rule as is the Supreme Court, Fay v. Noia, 372 U.S. 391, 428–429, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), considered whether Parker, by pleading guilty, had effectively waived his right to object to the racial composition of the grand jury which indicted him. Concluding that such a plea was not a waiver, the district court proceeded to the merits and found systematic exclusion of Negroes from the grand jury and ordered the state to release Parker or reindict and retry him within 120 days. Motion for stay of that order pending appeal was granted.

In deciding that it was permissible for Parker to raise, by way of collateral proceedings in federal court, his belated objection to the grand jury composition, the district court relied on this court's holding in McNeil v. North Carolina, 368 F.2d 313 (4th Cir. 1966). *McNeil*, however, is not apposite to Parker's case because McNeil pleaded not guilty. Where, in contrast, conviction is obtained upon a voluntary and intelligent guilty plea, it has been said that all nonjurisdictional defects are waived and cannot be raised after the plea is entered. United States v. Smith, 448 F.2d 726 (4th Cir. 1971); United States v. Rook, 424 F.2d 403 (7th Cir.), cert. denied, Rook v. United States, 398 U.S. 966, 90 S.Ct. 2180, 26 L.Ed.2d 550 (1970).

Defects in the grand jury process, other than failure of an indictment to state an offense, are nonjurisdictional and subject to waiver. Henderson v. Tollett, 459 F.2d 237, 241 n. 4 (6th Cir. 1972); Michener v. United States, 170 F.2d 973, 975 (8th Cir. 1948). We think the rationale of the *Brady* trilogy extends to bar objection to the composition of the grand jury raised after entry of a voluntary and intelligent guilty plea. As Mr. Justice Douglas, concurring, said in Santobello v. New York, 404 U.S. 257, 264, 92 S.Ct. 495, 500, 30 L.Ed.2d 427 (1971):

[O]ur opinions have established that a guilty plea is a serious and sobering occasion inasmuch as it constitutes a waiver of the fundamental rights to a jury trial, . . . to confront one's accusers, . . . to present witnesses in one's defense, . . . to

---

2. The Supreme Court has so characterized Parker's plea in this case. 397 U.S. at 799, 90 S. Ct. 1458.

remain silent, . . . and to be convicted of proof beyond all reasonable doubt. [citations omitted].

It is urged upon us that the North Carolina courts would reach a different result because of state rubric that flaws in grand juries are "jurisdictional." It is true that North Carolina's highest court has said that a constitutional flaw in selection of a grand jury is not cured by a guilty plea, but it was said in exposition of the state's procedural rule that objections to the grand jury composition must be made before pleading to the indictment or be forever barred. Thus we reach the same result as would the Supreme Court of North Carolina. State v. Covington, 258 N.C. 501, 128 S.E.2d 827 (1963).

Counsel for Parker argues that the guilty plea entered by Parker was not a valid waiver of the right to challenge the grand jury because it did not amount to "an intentional relinquishment or abandonment of a known right or privilege," the language used by the Supreme Court in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L. Ed. 1461 (1938). We believe that this " 'classic' definition of waiver" [3] is not the controlling test in a guilty plea context. We think Parker's conduct either constitutes waiver or is its effective equivalent.

That the Johnson standard was not intended to be applied inflexibly in all cases is shown by the admonition immediately following the standard that "[t]he determination of whether there has been an intelligent waiver . . . must depend, in each case, upon the particular facts and circumstances surrounding that case . . . . " Johnson, supra, at 464, 58 S.Ct. at 1023. The defendants in Johnson, after pleading not guilty to a charge of passing counterfeit notes, were arraigned, tried, convicted and sentenced in one day—all without the assistance of counsel. In holding that there had been no effective waiver of

the right to counsel, the Court emphasized the fundamental nature of the right and the resulting probability of unfairness when a defendant is convicted without assistance of counsel at trial. Johnson, supra, at 462, 463, 58 S.Ct. 1019.

The Johnson rule of waiver was enunciated in the context of both a not guilty plea and deprivation of counsel. The Brady trilogy and the instant case relate to voluntary and intelligent guilty pleas entered upon the advice of competent counsel. In describing the relationship between the entry of a guilty plea and the resulting waiver of various rights, the Supreme Court applied the same test in determining whether the plea and waiver would be considered valid. That test was stated in Brady, supra, 397 U. S. at 748, 90 S.Ct. at 1469, in relation to waiver of constitutional rights, and in McMann, supra, 397 U.S. at 766, 90 S. Ct. 1441, in relation to a guilty plea, to be whether the act was intelligent and *"Done with sufficient awareness of the relevant circumstances and likely consequences."* (emphasis added). This is the standard we think should govern in determining whether a guilty plea, voluntarily and intelligently entered with the assistance of counsel, blocks a subsequent attack on the indicting grand jury.

The Supreme Court observed in McMann, supra, at 766, 90 S.Ct. at 1446, that "a conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged." This reflects the Court's primary concern—that the innocent not be punished regardless of plea—and that as to those who may be innocent there can never be finality in the judicial process. In the Brady trilogy, even the undoubted substantial effect of a coerced confession upon the decision to plead was held insufficient to invalidate the plea. The violation of the fifth amendment, as ap-

---

**3.** Henderson v. Tollett, 459 F.2d 237 (6th Cir. 1972), cert. granted, 409 U.S. 912, 93 S.Ct. 233, 34 L.Ed.2d 172 (1972). In this case the Court of Appeals for the Sixth Circuit held on facts similar to Parker's case that the Johnson test controlled the waiver issue. Accord, Winters v. Cook, 466 F.2d 1393 (5th Cir. 1972).

plied to the states by the fourteenth amendment, was thus held insulated by the plea.

Parker also complains of a similar fifth amendment violation: that he is being held to answer for an infamous crime without indictment by a legally constituted grand jury. Parker's complaint is of no greater dignity, and maybe less, than the complaints of petitioners in the *Brady* cases. As the amendment has been interpreted, the government may never under any circumstances coerce one to witness against himself. In contrast, to fail to insist upon indictment and consent to proceeding by way of information is commonplace. E. g., Fed.R.Crim.P. 7(a). Moreover, the value of the grand jury *in* protecting the innocent is not unquestioned. Watts, Grand Jury: Sleeping Watchdog or Expensive Antique?, 37 N.C.L.Rev. 290 (1954); Whyte, Is the Grand Jury Necessary?, 45 Va.L.Rev. 461 (1959).

■ In *McMann* the Court acknowledged the triggering effect of a coerced confession in that fear that it will be received in evidence is a reason for pleading guilty. *McMann, supra,* at 768, 90 S.Ct. 1441. Parker's plea could not have been triggered by the invalid indictment except in the sense that "but for" the indictment he would not have been required to plead. That he was caused to plead, however, certainly did not cause him to plead guilty rather than not guilty. Unlike the situation in *McMann,* the invalidity of the indictment, if it had any causative effect, would have been a reason for pleading not guilty rather than for admitting guilt. Whether couched in terms of waiver or "con-

structive" waiver,[4] or in terms of finality, we think the *Brady* trilogy requires that one who has intelligently pleaded guilty with the advice of counsel not be allowed to assert belatedly various constitutional deprivations that could not have caused or even triggered his decision to plead guilty.

■ The problem is somewhat related to one that has arisen under Rule 11:[5] whether advice as to the consequences of the guilty plea must include a catechism of the various constitutional rights that are swallowed up in the plea. We have held that this is not the meaning of the word "consequences" in Rule 11. Wade v. Coiner, 468 F.2d 1059 (4th Cir., 1972). So also we think it would be wholly impractical to put upon the district courts the burden of canvassing in a collateral proceeding whether or not a given defendant at the time of pleading guilty explicitly considered and specifically waived every constitutional guaranty surrounding him. We hold, therefore, that an indictment by an unlawfully composed grand jury does not invalidate a subsequent voluntary and intelligent guilty plea, entered upon the advice of competent counsel and with awareness of the nature of the charge and the probable direct consequences of the plea.

To hold that a defendant may collaterally attack his open admission of guilt because he failed to state, upon entry of his plea, that he waived all constitutional objections, enumerating them (with specific mention here of invalid composition of the grand jury), would require of his interlocutor a tip of the tongue facility of enumeration possible of accomplishment by few constitutional lawyers on or off the bench. In the instant

---

4. *Martin v. United States,* 256 F.2d 345, 349 (5th Cir. 1958) ("must be said to have waived").

5. Fed.R.Crim.P. 11 provides:

A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that

the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea.

case, Parker amply conferred with his attorney, beginning the day following his arrest and continuing for a period of over a month before entering his plea. His plea was voluntary and intelligent. *Parker, supra,* 397 U.S. at 799, 90 S.Ct. 1458. We are aware of "no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged" merely because he now claims that he never discussed the specific issue of racial makeup of the grand jury with his attorney before entering his plea. *See Brady, supra,* 397 U.S. at 757, 90 S.Ct. at 1474.

In *McMann, supra,* 397 U.S. at 775, 90 S.Ct. at 1451, Mr. Justice Brennan, dissenting, characterized the trilogy as "another step toward the goal of insulating all guilty pleas from subsequent attack . . . ." Whether or not the Court is moving in that direction, we are inclined to the viewpoint that Parker's case is an *a fortiori* application of the rationale of the *Brady* trilogy: that constitutional violations occurring in the criminal process which do not exert a causative effect upon the decision to enter a guilty plea are swallowed up by the plea and insulated from collateral attack.

Reversed.