935 F.2d 271
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Howard JONES, Defendant-Appellant.
 No. 90-3693.
 United States Court of Appeals, Sixth Circuit.
 June 18, 1991.
 
 Before RALPH B. GUY, JR. and DAVID A. NELSON, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant, Howard Jones, appeals from his conviction for armed bank robbery. On appeal, Jones' only contention is that his oral statement made to the police officer after his arrest should have been suppressed.
 
 
 2
 Upon review, we conclude that Jones made an intelligent waiver of his right to remain silent and voluntarily gave a statement to the police detailing his involvement in the bank robbery. Accordingly, we affirm.
 
 I.
 
 3
 The Trans Ohio Bank in Mayfield, Ohio, was robbed by two armed persons on July 26, 1989, at approximately 3:10 p.m. The robbers wore ski masks and gloves, but one witness was able to see that one of the robbers was black.
 
 
 4
 The robbers fled in an auto driven by a third person. Witnesses were able to determine that the getaway car was a green Chrysler New Yorker and were also able to see and record the license number, which was immediately furnished to the police.
 
 
 5
 At 3:14 p.m., Chief Donald H. Stevens of the Mayfield Village Police Department heard the radio transmission about the robbery while in the police garage. Chief Stevens was less than one mile from the bank and immediately got into a police car. As the Chief was pulling out of the garage driveway, he saw the getaway car and gave chase. Other officers also joined in the chase, and at 3:23 p.m. the car was pulled over and its three occupants were arrested. In addition to defendant Jones, his brother Franklin Jones and his sister-in-law Catherine Jones were in the car. Catherine Jones was behind the wheel.
 
 
 6
 A search of the vehicle turned up the firearms used in the robbery, masks, ammunition, the money taken in the robbery, and assorted other objects clearly linking the three to the bank robbery. All three persons were arrested and taken to the police station. Defendant, after executing a waiver of rights form, was interrogated by Detective Harold DeBoe of the Mayfield Heights Police Department and Special Agent Robert Friedman of the FBI. At approximately 4:20 p.m., the defendant gave a full oral statement detailing his participation in the robbery. He declined to give a recorded statement.
 
 
 7
 On August 10, 1989, Jones was indicted. Prior to trial, Jones filed a motion to suppress his earlier oral statement. At the suppression hearing, Jones testified that he was intoxicated on the day of the robbery and did not remember waiving his rights or giving a statement. Witnesses for the government testified that Jones did not appear intoxicated, did not smell of alcohol, and appeared to understand fully the proceeding, as evidenced by his signed waiver of rights and his exercise of discretion to talk about this robbery, but he refused to answer questions as to other robberies. The district judge denied the motion.[1] At the subsequent trial, a jury found Jones guilty as charged.
 
 II.
 
 8
 There is no question but that Jones' oral confession was voluntarily made in the sense that no coercive action by the police occurred. Indeed, none is even alleged. This is not a case involving overbearing or overreaching by the police. The only issue before us is whether Jones' waiver of his fifth amendment right to remain silent was vitiated because he was under the influence of alcohol to the degree that he did not comprehend what was happening.
 
 
 9
 The Supreme Court cases that recently have discussed this issue generate some confusion. In Moran v. Burbine, 475 U.S. 412 (1986), the Court stated:
 
 
 10
 Echoing the standard first articulated in Johnson v. Zerbst, 304 U.S. 458, 464 (1938), Miranda holds that "[t]he defendant may waive effectuation" of the rights conveyed in the warnings "provided the waiver is made voluntarily, knowingly and intelligently." 384 U.S. at 444, 475. The inquiry has two distinct dimensions. Edwards v. Arizona, supra, at 482; Brewer v. Williams, 430 U.S. 387, 404 (1977). First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.
 
 
 11
 Id. at 421 (citations omitted).
 
 
 12
 It would appear clear that here we are dealing only with the second prong of the two-part Moran analysis. Only a few months after Moran was decided, however, the Supreme Court issued its opinion in Colorado v. Connelly, 479 U.S. 157 (1986), another confession case.
 
 
 13
 In Connelly, the Court first made it clear that "[w]henever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of [the] Miranda doctrine, the State need prove waiver only by a preponderance of the evidence." Id. at 168. The Court then went on to discuss the role that a defendant's degree of comprehension plays in determining whether or not Miranda rights have been knowingly and intelligently waived. In Connelly, the defendant had mental problems and felt "the voice of God" compelled him to confess. In other words, he had no free will. If one were to substitute "extreme intoxication" for the "voice of God," Connelly and the case at bar would be similar insofar as the Miranda issue is concerned in that both defendants are claiming a lack of voluntary waiver. The Court in Connelly went on to hold, however, that defendant's mental state does not enter into the voluntariness calculus.
 
 
 14
 We think that the Supreme Court of Colorado erred in importing into this area of constitutional law notions of "free will" that have no place there. There is obviously no reason to require more in the way of a "voluntariness" inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment, on which Miranda was based, is government coercion.... The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word.
 
 
 15
 Connelly, 479 U.S. at 169-70 (citations omitted).
 
 
 16
 The Court concluded by stating that "Miranda protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that." Id. at 170. Justice Stevens, Brennan, and Marshall dissented. Justice Stevens wrote:
 
 
 17
 The Court's position is not only incomprehensible to me; it is also foreclosed by the Court's recent pronouncement in Moran v. Burbine, 475 U.S. 412, 421 (1986), that "the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice...."
 
 
 18
 Connelly, 479 U.S. at 173 (footnote omitted).
 
 
 19
 Were we forced to decide this appeal by resolving the apparent Moran-Connelly conflict, we would be inclined to follow the later pronouncement in Connelly.[2] Our case can be resolved much more simply.
 
 
 20
 The question of Jones' incapacitating intoxication, or lack thereof, was simply a credibility issue. Jones testified he was totally intoxicated all day and did not even remember the bank robbery--much less his confession. Police witnesses testified that either Jones was not intoxicated at all, or, if he was, it did not affect his competency or volition. The court, and ultimately the jury, credited the police officers' version. Credibility determinations are for the trier of fact, and can only be reversed if clearly erroneous. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). Our review of the record convinces us that there was more than ample evidence from which a factfinder could have legitimately concluded that Jones knew what he was doing when he waived his Miranda rights.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Defendant subsequently requested a competency hearing. The trial judge ordered a psychiatric evaluation, and it was determined that Jones was competent
 
 
 [2]
 Justice Rehnquist, who wrote the majority opinion in Connelly, saw no conflict with Moran since he cited to Moran on several occasions as authority for his conclusion in Connelly