361 P.2d 509

**STATE of Utah, Plaintiff and Respondent,**

**v.**

**Brent E. SPIERS, Defendant and Appellant.**

**Brent E. SPIERS, Plaintiff and Appellant,**

**v.**

**John W. TURNER, Warden of the Utah State Prison, Defendant and Respondent.**

Nos. 9363, 9387.

Supreme Court of Utah.

May 1, 1961.

Walter L. Budge, Atty. Gen., Gordon A. Madsen, Asst. Atty. Gen., for respondents.

Pete N. Vlahos, Ogden, for appellant.

**WADE, Chief Justice.**

This opinion covers two cases. In the first, State v. Spiers, Brent Spiers, a 19-year-old boy, appeals from the termination of his probation and committing him to prison by the district court at Ogden. In the second, Spiers v. Turner, Spiers appeals from a decision of the district court of Salt Lake County denying him a writ of habeas corpus for his release from prison on the ground that he was placed there without due process of law. We first consider the habeas corpus case.

On July 28, 1960, Spiers and two other boys were taken before a magistrate and charged with committing a felony of second degree burglary by entering a building at night through an open door with intent to commit larceny. The complaint was read and each defendant given a copy. The magistrate informed them of their right to counsel at every stage of the proceeding, their right to and time for preliminary hearing, all of which they waived and were bound over to the district court and placed on bail.

Thereafter, on August 15, 1960, Spiers was arraigned before District Judge Norseth in Ogden, Utah. The information was read and he was furnished with a copy and informed that he was entitled to counsel and allowed time before entering his plea. He stated that he desired to waive both counsel and time for entering his plea, and to plead then, which the court allowed him to do. Thereupon the court referred his case to Mr. Tite of the Adult Probation Department to investigate whether he was suitable probation material and fixed August 29 as the day for report. The court warned: "That doesn't mean you're going to get probation * * *. It will depend on what the report indicates. But I want to warn you now if I put you on probation and you foul up again * * * if you fail to keep your commitments, I'll send you to the penitentiary."

On August 29, Spiers appeared before Judge Norseth to hear the report of the probation officer and for the court to decide whether to place him on probation or send him to prison. After such hearing the court suspended sentence, placed him on probation and ordered him to report to the court on October 3, 1960.

On September 6, Officer Tite brought Spiers into District Judge Wahlquist's court at Ogden for violation of his probation. He reported that on September 1, Spiers had pleaded guilty in the city court to reck-

less driving on August 31, contrary to his signed probation agreement to "violate no penal law." On questioning, Spiers admitted that he drove more than 80 miles per hour on Wall Avenue in a 40-mile-per-hour zone.

He said: "I got panicky when an officer wanted to stop me. There was another car that was by me, and we were going down Washington Avenue and the officer was following us and he told me to turn out. I went down on 25th Street to Wall."

Judge Wahlquist asked if he wanted a lawyer, and he answered, "No, I am not able to afford one."

The matter was then set over until two o'clock. The judge directed the clerk to make certain that his parents knew where he was and to give him an opportunity to talk with his parents or any lawyer or friend he wanted to talk this matter over with. When the court reconvened at two o'clock his mother was present in court, and Brent Spiers stated to the judge that he had talked with her, but Mrs. Spiers stated she hadn't really talked to him. The court then said, "You don't want to talk to anyone further about it?" Spiers answered: "No." After some further questioning, Judge Wahlquist said, "Eighty miles an hour in city traffic is a more serious matter than if you had robbed a gas station. It's more dangerous. It threatens more people. Do you have anything else you want to tell me about this? Do you have any reason why I shouldn't put you in prison?" Spiers answered: "I just got panicky."

After considerable discussion about his juvenile court record and city court record, the judge sentenced him to a term of not less than one nor more than 20 years in the Utah State Penitentiary.

Spiers was thereupon sent to the state prison and on September 16, 1960, through his present attorney, petitioned the Salt Lake District court for a writ of habeas corpus. After hearing, that court found that appellant had sufficient mental capacity throughout all of the proceedings against him to understand such proceedings and his right to counsel, and to waive such right, which he did.

■ The determining factor of whether appellant was convicted without due process of law [1] is whether there has been an intelligent waiver of his right to counsel. This must depend upon the facts and circumstances of [2] each case, including the background, experience and conduct of the accused.

1. See Article I, Section 7 of Utah Constitution, and Section 1 of XIV Amendment of the Constitution of the United States.

2. See Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. For a further discussion of the many problems which may be confronted by a question of this kind see Annotation Minor-Right to Counsel-Waiver, 71 A.L.R.2d 1160.

It is argued that the evidence shows that Spiers was only 19 years old, that he was immature for his age, that his I. Q. was only 75, that he graduated from high school with low grades and was obviously somewhat immature for his age. The burden is upon the defendant to show that he has been denied his constitutional rights.[3] The trial court, after hearing the witnesses and seeing appellant give his testimony, was in much better position than we to judge his intelligence. There was no evidence of fear or coercion, or any other reason why he was induced to waive his rights other than that he thought the course he took was for his best good. There was nothing to indicate that at any stage of the proceedings he did not understand what was going on, the questions asked, or the effect of his waiver of counsel. In view of this situation we conclude that the trial court's finding that he intelligently waived his right to counsel must be sustained.

Did the trial court err in revoking Spiers' probation? The main argument of Spiers' counsel is that he was not informed when he pleaded guilty of second degree burglary, that it was a felony and that such plea might subject him to a term in the state prison. A study of the record indicates that the above-stated claim is erroneous, for both in the complaint and the statements of the magistrate and the district judge it was made clear that he was charged with a felony, and Judge Norseth, as above quoted at the time of referring the matter to the probation department, warned him that if he was placed on probation but failed to keep his commitments, "I will send you to the penitentiary." Counsel further argues that the statements by Judge Wahlquist previously quoted that driving at 80 miles per hour is a more serious matter than if you had robbed a gas station is incorrect. While opinions may differ on the seriousness of robbing a gas station and driving at 80 miles per hour at eleven o'clock at night, still Spiers clearly violated his probation agreement, and this statement by the court does not show an abuse of discretion in revoking his probation.

There are no set rules by which that question can be determined. The mere fact that Spiers violated his probation agreement and was guilty of reckless driving does not necessarily require that his probation be revoked. In each case all the surrounding facts and circumstances should be, and usually are, carefully considered by the trial court, keeping in mind that rehabilitation of the person on probation is the most important objective. We should further keep in mind that the trial court is in a better position to determine this question than we are since he heard and saw the witnesses, had the advice and counsel of the probation offi-

3. See note 2.

cer and the advantages of observing the defendant and his advisers who appeared before the court.

Spiers was unstable, panicky and lacking in his determination to keep his probation agreement. He apparently had a wrong instinct to run from officers and not work with them. In the offense to which he pleaded guilty in the city court he exposed himself and the public to great danger in trying to speed from the officers rather than to do what they directed and cooperate with them. On the other hand, he seems ready to admit his crimes after he is caught. In other words, he seems to be a type that may be easily led and greatly in need of wise counsel and guidance. I hope that his experience in the state prison will be beneficial and increase his determination for rehabilitation rather than to influence him to follow hardened criminals, that his record there will be good so that he will be paroled at the earliest possible date.

From a careful consideration of the above facts, we conclude that the evidence does not justify us in holding that there was an abuse of discretion by the trial judge in revoking the probation.

Affirmed.

HENRIOD, McDONOUGH and CROCKETT, JJ., concur.

CALLISTER, J., concurs in result.