Edwin F. LARK

v.

UNITED STATES of America.

Civ. A. No. 2990.

United States District Court
S. D. West Virginia,
Charleston Division.

July 29, 1965.

James J. Laughlin, Washington, D. C., for petitioner.

Percy H. Brown, Asst. U. S. Atty., Charleston, W. Va., for respondent.

FIELD, Chief Judge.

In this proceeding the petitioner seeks a writ of error coram nobis to set aside

an order and judgment of conviction entered against him in the Huntington division of this Court some forty years ago on September 26, 1925. Petitioner was sentenced to an aggregate term of twelve years which sentence was served and petitioner long ago was released from federal custody. Petitioner also received a full and unconditional presidential pardon from this conviction on May 5, 1943. Despite this pardon, however, it appears that the 1925 conviction has precluded petitioner's admission to practice law at the bar of the District of Columbia.

The original petition was filed by order entered on September 19, 1961, and thereafter an amended petition was filed on December 5, 1961. The Government filed a motion for judgment on the pleadings as well as a motion for summary judgment, and while no order has yet been entered, counsel were advised that both motions would be denied. Understandably, the issues raised by the petition involved an investigation of comparatively old records, and both petitioner and his counsel were extended the full cooperation of the Clerk of this Court and his staff in making such investigation. A hearing was held on January 19, 1962, at which time the testimony of A. V. Fitzwater, onetime Clerk of this Court, Earl R. Cavender, Deputy Clerk of this Court, Duncan W. Daugherty, onetime United States Attorney, and the petitioner, Edwin F. Lark, was taken. Prior to completion of petitioner's testimony, he became ill on the stand, and was granted a recess. For a variety of reasons, the hearing was not resumed until January 17, 1964, at which time the evidence on behalf of petitioner was completed.

■ Despite its pending motions, the Government now concedes that under United States v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248, this Court has jurisdiction of this petition to give petitioner "an opportunity to attempt to show that this conviction was invalid." I also am persuaded that *Morgan* supports jurisdiction, and accordingly the issues raised by the petition will be disposed of on the merits in the light of the evidence presented, including the testimony taken at the hearings as well as the Court records of the original criminal case.

### Findings of Fact

Prior to July 23, 1925, Lark was arrested and taken before a United States Commissioner and on that date gave a bond with a surety thereon in the sum of $5,000.00 for his appearance before the Huntington division of this Court on the first day of the September, 1925 Term to answer a charge of violation of Section 215 of the Criminal Code. At that term Lark, together with three others, was named in a 15-count indictment charging violations of that section of the Code.

At the time of the indictment Lark was a licensed attorney at law in the State of West Virginia, having graduated from Howard University Law School in 1922 and been admitted to practice in West Virginia in 1924. Lark employed Duncan W. Daugherty, then a young practicing attorney in Huntington, and upon the suggestion of Daugherty also retained Mr. J. H. Strickling, now deceased, who at the time was an outstanding trial lawyer. Prior to the trial Lark's attorneys demurred to the indictment and also filed a motion to quash, which *demurrer was overruled and motion to* quash denied by order entered on September 25, 1925. Two of Lark's co-defendants were fugitives, and another, Jack M. Smith, entered a plea of guilty. Lark pleaded not guilty, was tried and on September 26, 1925, the jury returned a verdict of guilty against him. Thereafter Lark's attorneys made a motion to set aside the verdict and grant a new trial, which motion was overruled. Thereupon Judge George W. McClintic sentenced Lark to four years imprisonment on each of Counts 3, 4 and 6 of the indictment, providing that the sentences on each count should run consecutively, totalling 12 years. No appeal was taken on behalf of Lark and he thereafter was transferred to Atlanta where he served his commitment.

The present petition sets forth several grounds for setting aside Lark's con-

viction and they will be discussed seriatim:

■ (1) Lark is a member of the Negro race and alleges first of all that at the time of his trial and conviction, Negroes were systematically excluded from both the grand jury and the petit jury panel which returned the indictment and/or convicted the petitioner. Aside from the allegation in the petition there is no evidence whatever to support these charges. Mr. A. V. Fitzwater, who served in the Clerk's office for this district either as deputy or as clerk from 1908 through 1921, testified specifically that during that time Negroes were called for service on both grand and petit juries and Mr. Earl R. Cavender, who has served continuously as Deputy Clerk for this Court since May 16, 1917, testified to the same effect. Since 1882, shortly after the decision in the case of Strauder v. State of West Virginia, 100 U.S. 303, 25 L.Ed. 664, the statutes of West Virginia have countenanced the service of Negroes on both grand and petit juries in this state. The evidence in this proceeding indicates that the federal court in this district did not exclude Negroes from jury service at the time of petitioner's trial and conviction.

■ (2) While the petitioner also alleges that false testimony was knowingly used by the prosecution against him in this case, the evidence fails to support such allegation. Mr. Daugherty, who was one of petitioner's defense counsel, testified that he could recall nothing during the course of the trial which would support such an allegation.

(3) In rather flamboyant language the petitioner alleges that the 1925 trial "took on the aspects of a farce and the trial was had during the time that racial prejudice was aroused against the petitioner." Again the evidence fails to support such an allegation, Mr. Daugherty having testified that he recalled no irregularities at the trial. Indeed, there is nothing in the testimony of petitioner to support such an allegation, and petitioner's principal complaint seems to have been directed toward the demeanor and attitude of the presiding judge following the trial and conviction rather than any untoward conduct during the trial itself.

(4) Petitioner charges that his arrest was without just or proper cause and therefore invalid. Again there is no evidence to support such a charge and, in any event, its materiality insofar as the validity of the petitioner's conviction is concerned is somewhat obscure. The somewhat ancient records in the Court indicate that Lark was arrested on a federal warrant, taken before a United States Commissioner and permitted to give bond for his appearance to answer any indictment. Certainly there is nothing in the record to support the charge of any irregularity in petitioner's arrest.

■ (5) Petitioner alleges that he was hurried to trial and not given adequate opportunity to prepare his defense. This allegation finds no support in the record or the evidence. Petitioner had a period of two months between the time of his arrest and the time of his trial to make adequate preparations. As hereinbefore stated he employed Mr. Daugherty as his attorney, who, after an appraisal of the charges, considered it advisable to associate Mr. Strickling, a more mature and experienced trial lawyer. These circumstances, together with the record as to the motions filed on behalf of petitioner, indicate that his defense was adequately prepared and fairly presented. The petitioner charges that the trial judge "was prejudiced against the defendant to such an extent that his bias became overpowering and he should have forthwith disqualified himself and should not have permitted the trial to proceed to judgment."

■ In the light of the evidence in this proceeding, this allegation is extremely irresponsible and there is nothing to indicate any bias or prejudice on the part of Judge McClintic during the trial of the case. Again adverting to the testimony of petitioner, he stated that the presiding judge did not display "any particular attitude to me that was noticeable until after the verdict came in." The plain import of petitioner's testimony

is that he was fairly tried and convicted, but that after his conviction the judge was unduly severe in his attitude and sentence. Even assuming, *arguendo*, such a post conviction attitude on the part of the trial judge, it affords no grounds for granting the relief sought in the present proceeding.

■ (6) The next allegation is again somewhat irresponsible in charging discrimination against the petitioner because of his race and alleging that the defendants who were members of the white race were permitted to flee the jurisdiction until after the defendant had been convicted. Suffice it to say, there is nothing whatever to support this allegation.

(7) The same observation would seem to be appropriate with respect to the next allegation in the petition which is merely a conclusory statement to the effect that in 1925 it was impossible for a Negro to get a fair trial in West Virginia.

(8) Petition also charges that Lark was denied the right to appeal in forma pauperis by reason of the negligence of government officials, particularly charging such neglect on the part of the district attorney, Elliot Northcott, who was later a member of the Court of Appeals for the Fourth Circuit. First of all, there is nothing in the record to indicate that Lark was a pauper, nor is there anything to support the conclusion that any responsibility rested upon the government officials to monitor or assist Lark in any appellate procedure. As stated before, at the time of his conviction Lark was a practicing attorney and had the assistance of two competent lawyers both of whom had been employed. In his testimony Lark, himself, admitted that he knew that there were channels available for indigent appeals, and there is nothing in the record to support any charge that the failure to appeal was the result of any default on the part of representatives of the United States Government.

(9) The petition also charges that Lark's constitutional rights were violated in that he was "hurried off to prison and confined until the time had expired for the taking of an appeal." The record clearly shows that no notice of appeal was filed by Lark and certainly there was no violation of his constitutional rights in transferring him to the federal prison to commence the service of his sentence. Additionally, it appears that Lark carried on considerable correspondence with a Charleston attorney, T. G. Nutter, concerning the possibility of an appeal and whatever steps were taken, or not taken, with respect thereto would seem to have been a matter between Lark and Nutter, and would justify no inference or conclusion that his confinement presented any bar to possible appellate proceedings.

■ (10) Petition alleges that the stenographic transcript of the proceedings was destroyed making it impossible for the defendant to appeal his conviction. It is true that the transcript was destroyed, but this action was taken routinely only after the appeal period had expired. Indeed, it appears that Judge McClintic wrote a letter to Attorney Nutter under date of June 29, 1926, stating that the judge had been informed by the reporter that when no application was made for the transcript within the time provided by law, and no request made to keep the notes, Scott, the reporter in the case, had destroyed the notes "according to his system." The letter further contains an observation that the reporter had asked counsel who tried the case whether they wanted copies of the record and they told him that they did not and that the matter was ended.

*Conclusion*

In the light of the record the charges in the petition appear to be for the most part mere conclusory statements unsupported by the evidence which " * * * is at best a statement of present belief as to events * * * in the past, and is of itself not sufficient to enable the petitioner to sustain his prima facie task in the face of the presumption of regularity which attaches to judicial proceed-

ings, the need for which was recognized in Johnson v. Zerbst, 304 U.S. 458, at page 468, 58 S.Ct. 1019, 82 L.Ed. 1461, * * *." United States v. Valentino, (E.D.N.Y.1960) 180 F.Supp. 628, 630.

The petition is denied.