**Michael COUSIN, Plaintiff,**

v.

**OFFICE OF THRIFT SUPERVISION, DEPARTMENT OF TREASURY; John F. Downey, Deputy Director and Acting Director of Thrift Supervision; and Angelo A. Vigna, Northeast Director of the Office of Thrift Supervision, Defendants.**

**No. 93 CV 0548.**

United States District Court, E.D. New York.

Dec. 29, 1993.

Ramsey Clark and Lawrence W. Schilling, New York City, for plaintiff.

Office of Thrift Supervision (Carolyn B. Lieberman, Thomas J. Segal, Dirk S. Roberts and Geraldine R. Gennet, of counsel), Washington, DC, for defendants.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff brought this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, seeking a declaration that a suspension order issued by defendant Office of Thrift Supervision (the defendant), suspending plaintiff from engaging in certain banking activities is no longer in effect.

The court has jurisdiction based on Federal questions, pursuant to 28 U.S.C. § 1331, as the complaint alleges violations of the Fifth Amendment of the United States Constitution and 12 U.S.C. § 1818(g), providing procedures for certain administrative suspensions from banking activities. The defendant has moved to dismiss the complaint, and plaintiff has cross-moved for summary judgment.

## I

The papers submitted by the parties and the file in the case of *United States v. Cousin*, CR 90–745 (EHN), show, in substance, the following.

For some years plaintiff was Chairman of the Board of Directors and Chief Executive Officer of Cross County Federal Savings Bank (the Bank). On August 8, 1990 the United States charged plaintiff in a criminal complaint with bribery, in violation of 18 U.S.C. § 201. Based on the charges, the defendant issued a notice of suspension from participating in the Bank's affairs pursuant to 12 U.S.C. § 1818(g)(1). That section gives the defendant the power to suspend a bank official based on pending charges until the charges are "finally disposed of or until [the suspension is] terminated by the agency."

On September 9, 1990 a grand jury indicted plaintiff in eight counts, six charging that on six occasions between May 27, 1987 and December 19, 1989 plaintiff paid bribes to a special agent of the Internal Revenue Service. The two other counts charged plaintiff (a) with conspiring to induce a special agent of the Internal Revenue Service to receive a bribe so that he would investigate other people and (b) with aiding and abetting a bribe of a special agent of the Internal Revenue Service.

Plaintiff then requested a hearing to challenge his notice of suspension, pursuant to 12 U.S.C. § 1818(g)(3). He had an informal administrative hearing on March 1, 1991. The presiding officer recommended that the defendant keep the suspension in force, and on July 12, 1991 the Director of defendant adopted that recommendation. The Director's order stated that the "suspension and prohibition shall continue in effect until the final disposition of the indictment [sic] upon which the Notice was based."

Plaintiff retained an able and experienced lawyer, James M. LaRossa, to represent him in the criminal case. Mr. LaRossa urged the court that plaintiff was mentally incompetent to stand trial.

The court held a hearing on that issue. Defense counsel called a psychiatrist, who testified that plaintiff was not in a position to consult with his lawyers with a reasonable degree of rational understanding, that he would not be able to listen to the suggestions his attorney might have, and that he would not even be able to listen to the four years worth of tape recordings of himself or read the transcripts of those recordings.

Michael S. Ross, a partner of Mr. LaRossa, also testified for plaintiff at the hearing. Mr. Ross said that plaintiff talked about suicide "all the time," said the charges in the indictment were "meaningless," but at the same time refused to help his attorneys or even discuss the case with them.

The psychiatrist for the government, Naomi Goldstein, testified that although plaintiff had the capacity to deal with the criminal charges he had very successfully avoided dealing with them and would rather sit by passively and not put on a defense than actively participate in a trial that might end in a conviction.

After the hearing Mr. LaRossa made a submission saying that plaintiff was not physically capable or mentally competent to stand trial. The court then held a status conference on April 17, 1992. Mr. LaRossa reported that plaintiff was not getting better, indeed that he had developed serious diabetes and his mental condition was worse, although he wanted "an immediate trial so that he can proclaim his innocence."

The Assistant United States Attorney, Jodi Avergun, suggested that plaintiff's physical problems be addressed because if he were found mentally incompetent the court would have to detain him for examination, which she thought "would be at a great detriment to his physical health."

Thereafter, on May 6, 1992 plaintiff moved to dismiss the indictment, and on May 25, 1992 the court entered an order dismissing the indictment. That order said:

The defendant MICHAEL COUSIN having appeared in open Court on May 6, 1992 and having moved orally to dismiss the above-captioned indictment on the grounds that he is not physically competent to stand trial, AND

The United States Attorney for the Eastern District of New York, by Assis-

tant United States Attorney Jonathon M. Gerson, having reviewed medical evaluations of the defendant's physical condition, not having opposed the said motion, AND

The said motion having been granted, AND

The Court having received correspondence dated May 15, 1992 from Angelo Vigni [sic], Regional Director of the Office of Thrift Supervision, requesting that the Order of Dismissal in this case include language stating that the dismissal "does not constitute [a] final disposition of the indictment for the purposes of 12 U.S.C. § 1818(g), and is not a dismissal on the merits", AND

The Court having further received correspondence dated May 19, 1992 from Michael S. Ross, Esq., counsel to the defendant, stating that he "would not object to language in the dismissal order in effect stating that the dismissal does not constitute a final disposition of the indictment for purposes of 12 U.S.C. § 1818(g); is not a dismissal on the merits; and is a dismissal based solely upon Mr. Cousin's physical condition",

IT IS ORDERED that the indictment is dismissed against the defendant MICHAEL COUSIN. *This dismissal does not constitute a final disposition of the indictment for the purpose of 12 U.S.C. § 1818(g), is not a dismissal on the merits, and is a dismissal based solely upon the physical condition of the defendant MICHAEL COUSIN.* (Emphasis supplied).

Thereafter plaintiff retained his present attorney who filed the complaint on February 5, 1993 and an amended complaint on February 11, 1993, seeking a judgment that the dismissal of the indictment in fact amounted to a "final disposition" of the charges against plaintiff and therefore the suspension was no longer in effect. Defendant has moved to dismiss, and plaintiff has cross-moved for summary judgment.

## II

As noted above, prior to the entry of the May 25, 1992 order plaintiff's then counsel argued that he could not stand trial because he was physically and mentally incompetent, and adduced testimony of, among other things, severe stress-related physical disorders, arguably fatal should he stand trial, and of a five-year deterioration in plaintiff's ability to function psychologically, culminating in depression and an unwillingness to cooperate with counsel.

The United States Attorney showed great understanding and patience in dealing with plaintiff and his then attorneys, and the dismissal "solely upon the physical condition" spared plaintiff the embarrassing experience of being sent to a hospital for psychiatric examination to determine his mental fitness to stand trial. Plaintiff's then attorneys convinced the court that plaintiff was a shell of the man he once was, and it appeared that he was unable to continue in his former activities.

Defendant was concerned that plaintiff might use the dismissal of criminal charges as an occasion to return to the bank. Defendant thus sought, with the concurrence of the United States Attorney, the emphasized language in the May 25, 1992 order.

At oral argument on these motions the Assistant United States Attorney informed the court that the statute of limitations may now have run on all but one of the eight counts (involving a $200 Christmas gift to an Internal Revenue Service agent) in the indictment.

## III

The pertinent statutory section, 12 U.S.C. § 1818(g)(1) provides, so far as relevant:

**(A) In General**

Whenever any institution-affiliated party is charged in any ... indictment with the commission of or participation in—

> (i) a crime involving dishonesty or breach of trust ...

the appropriate Federal banking agency may, if continued service or participation by such party may pose a threat to the interests of the depository institution's depositors or may threaten to impair public confidence in the depository institution ..., suspend such party from office or

prohibit such party from further participation in any manner in the conduct of the affairs of the depository institution.

.       .       .       .       .

### (B)(ii) Effective period

A suspension or prohibition under subparagraph (A) shall remain in effect until the ... indictment is finally disposed of or until terminated by the agency.

The May 25, 1992 order referred to that section and the effective period for suspensions under it. Plaintiff's now attorney argues that the court should not give the language in the order its plain meaning that it was not "a final disposition of the indictment for the purposes of 12 U.S.C. § 1818(g)." He also contends that continued suspension deprives plaintiff of his Fifth Amendment rights to liberty and property without due process of law.

■ Under the language in the order plaintiff waived any automatic termination of the suspension. "Waiver is an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The court will look to the facts of the case before it to determine "whether there has been an intelligent waiver." *Id.* Individuals may waive their constitutional rights, but the Supreme Court has said that "courts indulge every reasonable presumption against waiver" of such rights. *Aetna Ins. Co. v. Kennedy,* 301 U.S. 389, 393, 57 S.Ct. 809, 812, 81 L.Ed. 1177 (1937).

■ Here plaintiff, who was free to go to trial, made an intelligent waiver of any right to have his suspension terminate when the criminal charges against him were dismissed. Plaintiff's attorneys during his criminal proceedings agreed to the language in the May 25, 1992 dismissal order. That language cites to and tracks the statutory provision at issue and can have no other meaning than that plaintiff's suspension would not end with the dismissal.

■ Once plaintiff waived the statutory termination of his suspension by final disposition of the indictment his recourse was to seek reinstatement by defendant. Under 12 U.S.C. § 1818(g) defendant retains the authority to terminate a suspension notice.

Plaintiff characterizes being subject to defendant's discretion as "remediless limbo." In fact defendant is preparing to hold a new administrative hearing on plaintiff's suspension, pursuant to 12 U.S.C. § 1818(e), although it is under no obligation to do so. Plaintiff is not suffering from a denial of due process.

### IV

Finally, this court's holding as to the meaning and effect of the consensual language in the May 25, 1992 order does not, as plaintiff's attorney suggests, extend this court's subject matter jurisdiction beyond its limits. The court is simply interpreting language agreed to between plaintiff, through counsel, and the government. Plaintiff's attorney attempts to buttress this argument by indirect claims that the court compelled plaintiff to accept this language. This is not so. Plaintiff could readily have chosen to go to trial in his criminal case, and this court was prepared to try the case.

### V

Defendants' motion to dismiss is granted. Plaintiff's cross-motion for summary judgment is denied.

So Ordered.