Carl F. Hughes and Ellen B. Hughes, : **CONSOLIDATED CASES**
h/w, and Bruce D. Hughes and :
Margaret K. Hughes, h/w, individually :
and on behalf of all others similarly :
situated, :
    Appellants :
               :
   v. :
               : No. 453 C.D. 2019
UGI Storage Company :
               :
               :
John Albrecht, individually and on :
behalf of all others similarly situated, :
      Appellant :
               :
   v. :
               : No. 454 C.D. 2019
UGI Storage Company : Submitted: September 9, 2022


BEFORE:  HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge
      HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON    FILED: November 30, 2022


    This case returns to us on remand from the Pennsylvania Supreme Court. The sole issue presented on remand is whether Appellants, the plaintiffs in consolidated class actions (Landowners), have waived their right to an evidentiary hearing on the question of whether Appellee, UGI Storage Company (UGI), has

effected a *de facto* taking of Landowners' rights in underground natural gas on their properties. Concluding that no waiver has occurred, we remand to the Court of Common Pleas of Tioga County (trial court) to conduct an evidentiary hearing.

## I. Background

The extensive factual background of this case is set forth at length in our Supreme Court's opinion in *Hughes v. UGI Storage Co.*, 263 A.3d 1144 (Pa. 2021) (*Hughes III*). Only those facts pertinent to this opinion are reproduced here.

In 2009, UGI filed an application with the Federal Energy Regulatory Commission (FERC), seeking a certificate of public convenience and necessity to enable it to acquire and operate certain facilities in the interstate transportation and sale of natural gas. *Hughes III*, 263 A.3d at 1145. Relevant here, UGI wished to acquire and operate underground natural gas storage facilities including a 1,216-acre facility in Tioga County referred to as the Meeker storage field. *Id.* UGI also sought to include within the certificated facilities a 2,980-acre protective zone around the storage field, referred to as a buffer zone. *Id.* at 1145-46. Landowners' properties lie within the buffer zone. *Id.* at 1146.

FERC granted UGI's application to acquire and assume the operation of the Meeker storage field. *Hughes III*, 263 A.3d at 1146. However, FERC denied UGI's request to certificate a cohesive 2,980-acre buffer zone. *Id.* FERC granted certification only for those portions of the buffer zone for which UGI demonstrated that it had acquired or would be able to acquire necessary property rights. *Id.* UGI has not acquired any rights to Landowners' properties in the buffer zone. *Id.* at 1148. The buffer zone surrounding the Meeker storage field remains in a partial, non-intact form. *Id.*

2

In November 2015, invoking Section 502(c) of the Eminent Domain Code,[1] 26 Pa.C.S. § 502(c), Landowners filed petitions seeking appointment of a board of viewers to assess damages for an alleged *de facto* condemnation of their property by UGI. *Hughes III*, 263 A.3d at 1148-49. Landowners alleged that UGI's application for certification of the buffer zone had effectively prohibited all hydraulic fracturing activities, known as fracking, on properties within the proposed buffer zone. *Id.* at 1149. Landowners averred that, as a result, leasing entities will not lease oil and gas rights from Landowners or drill for exploitation of such rights in the buffer zone. *Id.* at 1149. Consequently, Landowners asserted that they were deprived of their right to obtain financial benefits from the natural gas lying beneath their lands, and thus, they suffered a *de facto* condemnation. *Id.* at 1150.

UGI filed preliminary objections to Landowners' *de facto* taking claim, arguing that to be liable for a *de facto* taking, an entity must possess the power of eminent domain relative to the plaintiffs' property. *Hughes III*, 263 A.3d at 1150. UGI posited that FERC did not prohibit development activity on non-certificated properties in the buffer zone. *Id.*

The trial court initially found that a *de facto* taking had occurred and appointed a board of viewers to assess damages, but later stayed its orders appointing boards of viewers, pending resolution of the preliminary objections. *Hughes III*, 263 A.3d at 1150. Landowners sought discovery, which UGI resisted as unwarranted. *Id.*

The trial court scheduled a "hearing/argument/conference" on the preliminary objections. *Hughes III*, 263 A.3d at 1151. The ensuing proceeding,

[1] The current Eminent Domain Code constitutes a replacement and codification of the former Eminent Code of 1964. *See* Act of May 4, 2006, P.L. 112, No. 34, §1, *as amended*, 26 Pa.C.S. §§101-1106 (repealing and replacing the Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, 26 P.S. §§1-101-1-903).

3

conducted in February 2016 (2016 proceeding), was unrecorded. *Id.* Landowners contended that the trial court verbally directed them to submit additional materials on the question of whether there had been a *de facto* taking, along with supplemental briefing. *Id.* They argued that UGI's preliminary objections should be denied, or alternatively, that the trial court should conduct an evidentiary hearing to resolve any disputed factual matters. *Id.* However, UGI asserted that the unrecorded proceeding represented the sole and final opportunity for an evidentiary hearing on the question of whether there had been a *de facto* taking, and that Landowners, off the record, had waived their opportunity to present any evidence. *Id.*

The trial court granted UGI's preliminary objections and dismissed Landowners' petitions. *Hughes III*, 263 A.3d at 1151. In part, the trial court observed that Landowners had offered no evidence to support their assertion that oil and gas production companies would not enter into leases on properties within the proposed buffer zone; thus, even if UGI had condemnation power, there was nothing in the record to demonstrate that a *de facto* taking had occurred. *Id.* at 1152. Thus, the trial court's disposition arguably implied that Landowners' failure to present evidence forestalled them from doing so in the future. *See id.* (observing that the trial court "appeared to credit" UGI's argument that the 2016 proceeding "represented a full, fair, and final opportunity" for Landowners to present evidence).

Landowners appealed to this Court, which remanded for an evidentiary hearing concerning whether UGI had eminent domain power under Pennsylvania law. *Hughes III*, 263 A.3d at 1152. On remand, the trial court conducted a conference in January 2019 (2019 proceeding), at which both sides agreed that an evidentiary hearing, as contemplated by this Court in its remand order, was

4

unnecessary to the resolution of *the legal question of whether UGI was invested with a sufficient power of eminent domain*. *Id.* at 1153.

Without resolving the parties' pending discovery disputes, the trial court reaffirmed its position that an entity must have a property-specific power of eminent domain before it can be liable to pay just compensation under the Eminent Domain Code. *Hughes III*, 263 A.3d at 1154. Accordingly, the trial court again sustained UGI's preliminary objections and dismissed the petitions. *Id.* (citing *Hughes v. UGI Storage Co.* (C.P., Nos. 714-CV-2014 & 854-CV-2015, filed Mar. 25, 2019)). Landowners again appealed; this Court affirmed. *Hughes III*, 263 A.2d at 1154 (citing *Hughes v. UGI Storage Co.*, 243 A.3d 278 (Pa. Cmwlth. 2020) (*en banc*) (*Hughes II*)).

Our Supreme Court granted allocatur. *Hughes III*, 263 A.3d at 1155. Landowners urged that they should be permitted to make their case regarding a *de facto* taking at an evidentiary hearing in the trial court. *Id.* at 1157-58. Our Supreme Court held that no specific power of eminent domain was required in order for a *de facto* taking to occur. *Id.* at 1156-57. Rather, "[a] taking occurs when a public entity substantially deprives a private party of the beneficial use of his property for a public purpose. . . . Definitionally, the concept of an unconstitutional taking . . . turns on the fact of the deprivation for public use." *Id.* at 1157. The Court explained further that

> where governmental power is delegated to an otherwise private corporation, that company may assume a quasi-public status in furtherance of the public interest . . . . And while the issue hasn't been put before us in these terms, and therefore our treatment of it is not binding, we do not presently discern a constitutional requirement that a quasi-public entity alleged to have invoked governmental power to deprive landowners of the use and enjoyment of their property for a public purpose must be invested with a

5

power of eminent domain in order to be held to account
for a *de facto* condemnation.

*Id.* at 1158.  Accordingly, the Court vacated this Court's decision and remanded the case, concluding, in relevant part, that the matter should be returned to this Court to address Landowners' challenge to the trial court's alternative disposition, which was implicitly based on Landowners' purported off-the-record waiver of entitlement to an evidentiary hearing.  *Id.* at 1158.

## II. Discussion

Waiver is "the intentional relinquishment or abandonment of a known right or privilege." *Trigg v. Children's Hosp. of Pittsburgh*, 299 A.3d 260, 275 (Pa. 2020) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (additional quotation marks omitted)).  Waiver "will not be presumed or implied unless by [one party's] conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to." *Commonwealth ex rel. Corbett v. Large*, 715 A.2d 1226, 1229 (Pa. Cmwlth. 1998) (citing *Brown v. City of Pittsburgh*, 186 A.2d 399 (Pa. 1962)).

Here, UGI asserts that Landowners twice waived their right to an evidentiary hearing on whether a *de facto* taking occurred.  We disagree.

## A. The 2016 Trial Court Proceeding

UGI contends that the first waiver occurred when Landowners appeared for the 2016 "hearing/argument/conference" on UGI's preliminary objections, *Hughes III*, 263 A.3d at 1151, but Landowners chose to present only argument.  *See* UGI Br. at 8-9 & 12-13.  However, UGI concedes that the 2016 proceeding was not transcribed.  *Id.* at 4; *see also Hughes III*, 263 A.3d at 1151.

6

Consequently, there is nothing in the record documenting what actually occurred. We cannot consider matters outside the record. *Sears, Roebuck & Co. v. Workers' Comp. Appeal Bd. (Lear)*, 707 A.2d 618, 620 n.6 (Pa. Cmwlth. 1998) (stating that "[t]his court may not consider or rely upon a matter dehors the record as the basis for its decision"); *Cnty. of Allegheny v. McCullough*, 659 A.2d 40, 45 (Pa. Cmwlth. 1995) (observing that "we continue to adhere to the principle that we will not consider matters that are outside the record") (additional citation omitted). Therefore, we cannot rely on UGI counsel's representation of what transpired.[2]

There is insufficient information in the record to indicate that any waiver occurred, and we will not infer waiver in the absence of a record. Moreover, UGI does not assert any prejudice arising from its alleged belief that Landowners waived their right to an evidentiary hearing. *See Trigg*, 299 A.3d at 275. Accordingly, we reject UGI's assertion that a waiver occurred in the 2016 proceeding.

## B. The 2019 Trial Court Proceeding

UGI argues that a second waiver occurred at a 2019 hearing, at which Landowners again offered no evidence and, in addition, affirmatively indicated no hearing was required. *See* UGI Br. at 8-9 & 12-13. Contrary to UGI's characterization of the discussion at that proceeding, it was not a hearing, and Landowners did not therein waive their request for an evidentiary hearing on the *de facto* taking issue. A review of the transcript of the 2019 proceeding reveals that the parties and the trial court understood its purpose to be a discussion of the legal issue

---

[2] Similarly, we are not free to consider any representation by Landowners' counsel concerning any discussion during argument before our Supreme Court, even though based on counsel's "detailed notes." Landowners Br. at 18 n.4.

of UGI's authority to exercise eminent domain powers. Further, everyone understood that issue to be a threshold question to be resolved as a conclusion of law before the potential need for an evidentiary hearing on the *de facto* taking issue would arise.

The proceeding, which only counsel attended, began with the trial court stating the purpose of the proceeding, which was informational and not evidentiary. The court explained: "The reason I . . . asked you guys to come is to clarify some things in my . . . own mind and maybe I could start with . . . some very simply [sic] concepts, okay?" Reproduced Record (R.R.) at 699a. Similarly, at the end of the discussion, the trial court commented, "I very much appreciate you, you fellas bringing me up to speed on this and answering my questions and educating me on it . . . ." R.R. at 728a.

As the discussion proceeded, several interactions occurred that made clear Landowners were deferring, not waiving, an evidentiary hearing in order to first resolve the threshold legal question of UGI's eminent domain power. The following excerpts confirm the absence of waiver by Landowners and the recognition by both UGI and the trial court that a future evidentiary hearing might be needed:

> [UGI'S COUNSEL]: [O]ur position, Your Honor, is that you were correct that the threshold in [sic] question is whether [UGI] has the power to condemn. If we don't have the power to condemn, nothing else matters.
>
> THE COURT: I agree. Do you agree?
>
> [LANDOWNERS' COUNSEL]: I, I agree in part. *I do want to just, for purposes of preserving our arguments, make clear that we do have this alternative argument . . . which is even if [UGI] hasn't perfected its eminent domain powers there still was a de facto taking here*, but I do agree and it sounds like we all agree that the

8

main event [sic] is whether [UGI] has eminent domain power under Pennsylvania Law, specifically the, the [BCL].

R.R. at 703a-04a (emphasis added).

[LANDOWNERS' COUNSEL]: . . . [W]e've submitted declarations from, including [Plaintiff Carl F.] Hughes, that said we initially had some interest in drilling and then once, once it was determined that this was -- the property was in a buffer zone, they got cold feet.

. . . .

THE COURT: . . . So, you're saying that the driller has determined that they can't drill?

[LANDOWNERS' COUNSEL]: They did not specifically say that, but . . . that was what they told Mr. Hughes.

[UGI'S COUNSEL]: Your Honor, those, those were the declarations that were hearsay on hearsay you might recall that they submitted after the [2016] hearing.

THE COURT: Am I wrong or is this the gravamen of the whole case? . . . . Whether they've lost something.

[UGI'S COUNSEL]: [W]ell, yeah, that is correct. Because, remember, to have a *de facto* taking first, you have to have the power to condemn, second . . . there has to be some taking. You have to have lost something. And third, that loss had to be as a result of the action of [UGI] here. Now, we don't think they've proved any of those, but what we're suggesting is *we don't even have to get into those other two matters* because if Your Honor finds that we didn't have the power of eminent domain that that's it. It doesn't matter if the other two are there. We don't think they are there, we think all of this as we indicated in our briefs is all the assumptions on the part of [Landowners]. I think [Landowners] were absolutely correct at the first hearing in front of Your Honor when they said we don't have to put on any evidence because frankly, there is none to put on. And *as long as Your Honor finds that we didn't*

9

*have the power to condemn, there is no need for any other hearings.*

THE COURT: Okay. Let's go back to that then. *Do I need a hearing? Do I need a factual hearing as there is a difference of opinion in the finding -- the proposed findings of fact alone? Should I go ahead and schedule an opportunity for* [*Landowners*] *to present whatever is it that they wish to present in support of this through testimony?*

[UGI'S COUNSEL]: Sure. Well, Your Honor, with regard to the ability of [UGI] to have the power to condemn[,] . . . *if* [*Landowners*] *can indicate what kind of testimony would bear on that then I think we might be able to listen to it*, but as far as I can tell, looking at the undisputed facts, the undisputed fact that FERC didn't certificate [UGI], the undisputed fact that we do not have a Public Utility Commission [(PUC)] Certificate of Convenience and the undisputed fact that the Commonwealth Court directed Your Honor to look at these two cases that I certainly believe indicate conclusively that without a [PUC] certificate and without a FERC certificate we don't have the power to condemn. Now, I'm not sure what else can be had.

R.R. at 711a-14a (emphasis added).

THE COURT: Mr. Johns, I return to my original question. And I guess it's really a question that you have control over. *Do we need any type of evidentiary hearing?*

[LANDOWNERS' COUNSEL]: *As to the* [*BCL*] *legal issue? . . . Your Honor, what I would suggest, respectfully, is I think it would be helpful for the parties to get guidance from the Court on that issue and then I think we'll be in a better position . . . to answer that question.* I think we're still, essentially on first base here because we don't know if the first element of our cause of action is, from the Court's perspective, . . . if [UGI] has the power of eminent domain or not. I would suggest that the Court give us some guidance on that issue.

THE COURT: Suppose I rule in [UGI's] favor . . . . [H]ow does that change the landscape on what you're going to do?

10

[LANDOWNERS' COUNSEL]:  Well, I think for that issue if we were to lose we would . . . take an appeal.  We would take it back up to the Commonwealth Court . . . .

THE COURT:  -- [S]o you don't want an evidentiary hearing *at this point*?

[LANDOWNERS' COUNSEL]:  Exactly.

[UGI'S COUNSEL]:  And, and I believe, Your Honor, with, with that you have or will have a [sic] follow[ed] the mandate from the Commonwealth Court.  You, you will have considered these two cases, you would have given the opportunity for an evidentiary hearing.  I agree that *there is no need for an evidentiary hearing . . . on this threshold matter of whether we have the power to condemn . . . .*

. . . .

[LANDOWNERS' COUNSEL]:  And, and, Judge, just to be clear, our position on appeal was *it was premature to have an evidentiary hearing because there were several and there still are discovery related issues that were in dispute and I wanted to have them resolved and get the discovery we need before there is some kind of a  hearing.*  I think that's fair and --

THE COURT:  -- [O]kay.  Is it agreed now that, that the discovery issues are, are resolved?

[LANDOWNERS' COUNSEL]:  No.

. . . .

[LANDOWNERS' COUNSEL]:  -- [A]nd I think *before we have a hearing on that issue of whether fracking is prohibited in the buffer zone, we're going to want discovery* on that.  And, again, that's why I think let's get past first base on the [BCL] issue, see where we are . . . .

. . . .

[UGI'S COUNSEL]:  Well -- actually, I think we're more [or] less on the same wave length here because I, I don't disagree . . . .  [W]ith regard to the second [and] third

11

criteria for a *de facto* taking, there may or may not be some discovery issues that, you know, we can talk about. *But I think we all agree that we're -- with regard to the initial, the threshold question as to whether* [*UGI*] *has the power to condemn, as, as* [*Landowners' counsel*] *pointed out, we don't need an evidentiary hearing on that . . . .*

R.R. at 720a-24a (emphasis added).

In short, it is clear from the 2019 transcript that Landowners were specifically preserving their right to a future evidentiary hearing. Moreover, both UGI and the trial court understood that Landowners were not waiving their right to a hearing, but rather, were seeking to resolve some discovery issues and a threshold legal issue before proceeding with an evidentiary hearing on whether a *de facto* taking occurred. Accordingly, we reject UGI's assertion of waiver related to the 2019 proceeding.

## III. Conclusion

Based on the foregoing discussion, we conclude that Landowners have not waived their right to an evidentiary hearing on the issue of an alleged *de facto* taking by UGI. Accordingly, we remand to the trial court to conduct such a hearing.

_____
CHRISTINE FIZZANO CANNON, Judge

12

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Carl F. Hughes and Ellen B. Hughes, h/w, and Bruce D. Hughes and Margaret K. Hughes, h/w, individually and on behalf of all others similarly situated,<br>Appellants<br><br>v.<br><br>UGI Storage Company | : : : : : : : : : : : : : : : | **CONSOLIDATED CASES**<br><br><br><br><br><br><br>No. 453 C.D. 2019 |
| John Albrecht, individually and on behalf of all others similarly situated,<br>Appellant<br><br>v.<br><br>UGI Storage Company | : : : : : : : : | <br><br><br><br>No. 454 C.D. 2019 |

## O R D E R

AND NOW, this 30th day of November, 2022, this matter is REMANDED to the Court of Common Pleas of Tioga County, and that court is directed to hold an evidentiary hearing on the issue of whether UGI Storage Company effected a *de facto* taking of Appellants' rights in natural gas beneath the surface of their properties.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge